## BROWN et al. v. MARTIN et al.

1. Any county local tax imposed by a county for educational purposes must be found in the amendment to the constitution proposed by the General Assembly of 1919 (Ga. L. 1919, p. 66), which empowers the county authorities to levy a tax, on the recommendation of the board of education, within the limits there specified,—that is, not less than one nor more than five mills on the dollar on all taxable property of

the county outside of any independent local system. And where the limit of five mills has been reached by a local tax for the support of public schools, the county authorities can not be compelled, on the recommendation of the board of education, to levy an additional tax for educational purposes. Such additional tax is not permissible under the law, outside of the independent local systems.

2. It follows that the court erred in granting a mandamus absolute requiring the county authorities whose duty it was to levy taxes for county purposes to impose an additional tax of two and one half mills on the dollar for educational purposes in a county where the limit of five mills on the dollar had already been reached.

No. 5160. APRIL 16, 1926.

Mandamus. Before Judge J. B. Jones. Hart superior court. October 23, 1925.

Defendants in error, as the duly constituted and commissioned board of education of Hart County, charged under the laws of the State with the duty of administering the school laws of the State as they relate to Hart County, filed a petition for mandamus against the plaintiffs in error, alleging in their petition that it is and was their right and duty to make contracts with all the teachers in the public schools in the county, including the county agent, the home demonstration agent, and vocational teachers, and fix the salaries therefor; that in the exercise of this legal right and in the discharge of this legal duty defendants in error made contracts with the teachers in the public schools of the county, as well as contracts with certain vocational teachers named in the fourth paragraph of their petition, as well as contracts with a named person as county agent, and another as home economic agent. The salaries fixed for each of the vocational teachers, the county agent, and the home demonstration agent are set forth in the petition, aggregating the sum of $9,060. It is alleged in the petition that the contracts were made in the exercise of the authority given the board of education by the acts of the General Assembly of Georgia and in conformity with the act of Congress relating to vocational and agricultural extension work. The petition sets forth the amount of property for the year 1925 subject to taxation, as shown by the tax-digest, which is $3,373,543. Taking into consideration these contracts and the contracts with the other teachers in the common schools of the county, it was determined by the board of education that a tax levy of two and one half mills on the dollar of taxable property was necessary; this,

of course, being in addition to the tax of five mills now being levied in Hart County under paragraph 1 of section 1 of article 7 of the constitution. A resolution to this effect was adopted by the board of education, a copy of which was filed with the board of commissioners of roads and revenues of Hart County, with the request that a tax of two and one half mills be levied to take care of the contracts made and entered into with the teachers enumerated in the fourth paragraph of the petition, including the salaries of the county agent and the home demonstration agent. The board of commissioners refused to levy the tax of two and one half mills, as requested, but did levy one and one half mills on each dollar's worth of taxable property for what is termed, in the tax levy of the board for 1925, "Educational Fund," the five-mills tax being levied for what is termed "Public School Purposes." The tax levy of five mills is operative on all property of the county not embraced in independent school systems of incorporated towns; the tax levy of one and one half mills is county-wide in scope, embracing all the property within Hart County subject to taxation.

It is alleged in the petition that the tax levy of one and one half mills is insufficient to discharge the contracts with vocational teachers and county and home demonstration agents; that authority to fix these salaries is vested absolutely in the board of education; that the board of commissioners of roads and revenues have no control over the matter; and that under the law it is mandatory upon the board of commissioners to levy and direct the collection of a tax sufficient to discharge these contracts, as fixed and determined by the board of education. The refusal of the board of commissioners to levy the tax recommended is averred.

Upon this petition the issuance of a mandamus nisi was prayed against the board of commissioners of Hart County, requiring them to show cause why a mandamus absolute should not issue, requiring the levy of the tax of two and one half mills as recommended. Mandamus nisi issued, which was made absolute upon the hearing of the case.

*J. H. & Emmett Skelton,* for plaintiffs in error.

*George L. Goode* and *A. S. Skelton,* contra.

BECK, P. J. (After stating the foregoing facts.)

The powers, right, and authority to impose taxes upon the people of this State are in the hands of the people. The General

Assembly has only those powers of taxation over the State which it is permitted to exercise under the grant of power contained in the constitution, which was framed by the representatives of the people and afterwards adopted by the people. In art. 7, sec. 1, par. 1, of the constitution of this State (Civil Code, § 6551) are specified the purposes for which the power of taxation may be exercised by the General Assembly; and it can be exercised by that body only for the purposes specified. Among those there specified are "for educational purposes." And in art. 7, sec. 6, par. 2, of our constitution (Civil Code, § 6562), as it originally stood, it is declared that: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." Thus in the section of the constitution first quoted we find that the power of taxation over the whole State may be exercised by the General Assembly for educational purposes; and in the other section of the constitution quoted we find a limitation upon the power of the General Assembly to delegate to counties the right to levy a tax for any purpose except those which are specified in that section, among them being educational purposes. The meaning of the expression "educational purposes," as used in the constitution of 1877, was enlarged by a subsequent amendment proposed by the General Assembly in 1910 (Ga. L. 1910, p. 45), and ratified by the people. This amendment, after specifying the paragraph, section, and article of the constitution to be amended, reads as follows: "The same is hereby amended by striking from said paragraph 2, section 6, article 7 the following words, 'in instructing children in the elementary branches of an English education only.' So that when said paragraph is amended it will read as follows: 'The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes, to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litiga-

tion, quarantine, roads, and expenses of courts; to support paupers and to pay debts heretofore existing.' " The power of taxation with which we have to deal in this decision comes under the head of powers relating to taxation by counties for educational purposes. By an amendment to the constitution proposed by the General Assembly in 1903 (Ga. L. 1903, p. 23), and ratified at the next election, authority was given to the counties, upon the recommendation of the "corporate authority," to maintain public schools in their respective limits by local taxation; and it was provided in that amendment to the constitution, now embodied in section 6579 of the Civil Code, that "Authority may be granted to counties, militia districts, school districts, and to municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation." The amendment to the constitution last referred to also eliminated from the constitution the requirement that the imposition of this tax should be submitted to the people for ratification at an election held for that purpose. And we are of the opinion that any local tax imposed by a county for educational purposes must be found in the amendment to the constitution proposed by the General Assembly of 1919 (Ga. L. 1919, p. 66), which authorizes the county authorities to levy a tax on the recommendation of the board of education, within the limits there specified, that is, not less than one nor more than five mills on the dollar on all taxable property of the county outside of any independent local school system. As we have seen above, the provision in the constitution authorizing the General Assembly to delegate to a county the right to levy a tax for educational purposes was changed, so far as the meaning of the expression "educational purposes" was concerned, by the amendment to the constitution proposed by the General Assembly of 1910, and ratified at the next election; but the meaning of the expression "educational purposes" was by that act extended only to the striking from paragraph 2, section 6, article 7 of the constitution the words "in instructing children in the elementary branches of an English education only," and it did not have the effect of authorizing the General Assembly to confer power upon counties to levy a tax to establish and maintain public schools independently of the power conferred upon counties to levy a tax for educational pur-

poses. The provisions for establishing and maintaining public schools and allowing taxation by counties for educational purposes are not distinct and independent constitutional provisions. They bear upon and have relation to the same subject. It is insisted in the argument of counsel for plaintiffs in error that these constitutional provisions are distinct and independent; that paragraph 1 of section 4 of article 8 of the constitution conferred upon counties the right to levy a tax to establish and maintain public schools, within the limit upon the amount of the tax that may be levied, specified in that paragraph of the constitution, and that the other portion of the constitution conferring upon counties the power to levy a tax for educational purposes is distinct and independent from that; that the first relates exclusively to public schools and the instruction carried on through and by the public schools for the benefit of those within the school age, but that the term "educational purposes" is more comprehensive in meaning and covers educational work generally. And following this course of reasoning counsel for plaintiffs in error reached the conclusion, and so argued, that while, as to the right to levy a tax for "public schools," there is a maximum levy beyond which the county authorities may not go, yet as to the levy of a tax for "educational purposes" there is no constitutional or legal barrier restricting the amount. That is, as they assert and urge, that while the county can only levy a maximum of five mills on the dollar on all property embraced in an independent school system for the maintenance of "public schools," in the usual and ordinary sense of that expression, yet the county authorities can, in addition to this levy of five mills, impose and collect a tax "unlimited in amount," and that this tax last referred to can be levied on all the taxable property in the county for the support of any agency or institution carrying on educational work comprehended in the general term "educational purposes." We can not accept the conclusion that the legislature or framers of the constitution, or the people in ratifying these amendments to the constitution, ever intended, by the changes made by the amendments referred to above, to put it in the power of a county board of education, however discreet and wise the members of that board might be, to levy an unlimited tax on the property of the people, even when they had in view some noble purpose fairly embraced within the meaning of the

12

expression "educational purposes." And so we have reached the conclusion that while, under the authority given by the legislature, the county may make use of the educational agencies specially contemplated by the suit brought by petitioner, the funds necessary to defray the expenses of those agencies must be found within the limits fixed by the constitutional amendment proposed by the General Assembly in 1919 and ratified in 1920. This is not in conflict with rulings made in prior decisions of this court. There may be certain expressions used wherein the phrase "educational purposes" could be given the meaning insisted upon by counsel for plaintiff in error here, and which we have alluded to above.

In view of the gravity of the question involved, we have thought it proper, under the entire record, to decide the case upon the real merits of the controlling issue; and in view of the conclusion that we have reached, it is unnecessary to deal with the question as to the right of the board of education to maintain the suit and to compel by mandamus the board of county commissioners to levy the tax under the resolution which they had passed.

*Judgment reversed. All the Justices concur.*