# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## MARCH TERM, 1927

---

## CENTRAL OF GEORGIA RAILWAY COMPANY v. WRIGHT, comptroller-general; et vice versa.

1. The trial judge did not err in sustaining the affidavits of illegality attacking item 10 of the levies, to pay salaries of county agent and for educational purposes, as provided by the act of 1922 (Acts 1922, p. 81).

2. A county without the recommendation of a grand jury may levy 50 per cent. of the State tax for county purposes, under section 508 of the Code. If the levy of 50 per cent. of the State tax, as authorized by section 508, is exhausted, and under the terms mentioned in section 507 the levy of an additional 100 per cent. on the State tax is insufficient to pay the current expenses for the year and the accumulated debts in one year, then the county authorities without the recommendation of a grand jury, for the purpose of paying the indebtedness of the county, may levy an additional assessment for the purpose of paying its accumulated debts and the current expenses, unless the latter have been included in the levy for county purposes or otherwise provided for. This item of the levy must be sufficient to pay off the accumulated debts of the county in four years. Unpaid lawful current expenses incurred in one year, which were not discharged by payment and for which county warrants were legally issued, are accumulated debts of the county falling within the provisions of paragraph 1 of section 513 of the Code.

3. Levies for the support of the poor, the support of the county police, and the support of the schools do not require the recommendation of a grand

---

Counties, 15 C. J. p. 635, n. 85 New; p. 636, n. 87; p. 637, n. 97; p. 638, n. 2 New, 15; p. 639, n. 20; p. 640, n. 29 New, 32.

1

jury. Tax levies for the support of the poor, the county police and the expense incident thereto, and the public schools are taxes levied under special acts, and do not come under section 508 of the Code.

(a) Tax laws passed since the adoption of the Code, to raise revenues for specific purposes definitely stated therein, are extra or special taxes, not coming within the provisions of sections 507 or 508 of the Code.

(b) Special or extra taxes authorized by the General .Assembly, if within the provisions of the constitution, must be levied by the county authorities, and be collected and paid, without regard to their classification. *Arnett* v. *Griffin*, 60 *Ga*. 350; *Walden* v. *Lee County*, 60 *Ga*. 297; *Commissioners* v. *Porter Mfg. Co.*, 103 *Ga*. 613 (30 S. E. 547).

4. A county may levy more than 100 per cent. of the State tax, without the recommendation of a grand jury, for the payment of accumulated debts, "when debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year." Section 507 of the Civil Code is not to be construed to limit the power thereby conferred so as to impose only an additional levy of 50 per cent. of the State tax in case it should be necessary. to levy the 50 per cent. of the State tax under' the provisions of section 508 of the Code. HILL, J., concurs specially as to this note.

5. An order of the proper county authorities making a levy of county taxes is invalid if the purpose of each item of the levy is not plainly and definitely specified (*Sullivan* v. *Yow*, 125 *Ga*. 326, 54 S. E. 173), but the entire levy is not void merely because one or more of the items of the levy in which the purpose is plainly and definitely specified may, for another and different reason, be void.

6. "Extra," extraordinary, or special taxes, no matter which term is used to denominate the taxes not essentially necessary for carrying on the ordinary functions of government, are not to be computed in the consideration of the question whether a tax levy is excessive when the term "current expenses" as used in section 507 is involved.

Nos. 5539, 5540, 5574, 5575. SEPTEMBER 22, 1927.

Affidavit of illegality of execution. Before Judge Searcy. Spalding superior court. June 12, 1926.

The tax levy ordered by the commissioners of roads and revenues of Spalding County for the year 1924 was as follows:

"1. To pay the legal indebtedness of the county due, or to become due during the year, or past due, 3.95 mills.

"2. To build or repair court-houses or jails, bridges or ferries, or other public improvements, according to contract, 5 mills.

"3. To pay sheriffs', jailers', or other officers' fees that they may be legally entitled to out of the county, 7/10 mill.

"4. To pay the expenses of the county for bailiffs at court, nonresident witnesses in criminal cases, fuel, servant hire, stationery, and the like, 9/10 mill.

"5.   To pay jurors a per diem compensation, 5/10 mill. ·

"6.   To pay expenses incurred in supporting the poor, and as otherwise prescribed by the Code of Georgia, 1.25 mills.

"7.   To pay salaries, wages, and expense for working, improving and repairing the public roads under the provisions of the alternative road law, 3 mills.

"8.   To pay any other lawful charges against the county, 4/10 mill.

"9.   To pay salaries and expense of maintaining county police, 5/10 mill.

"10.   To pay salaries of county agent and for educational purposes, as provided by Acts 1922, p. 81, 1 mill.

"11.   To support and maintain the public schools of Spalding County outside of the City of Griffin; provided that this tax shall be levied and collected only on property located and situated outside of the City of Griffin, the same being levied upon the recommendation of the board of education, 5 mills.   Total, 22.20 mills."

The levy for 1925 was the same as the foregoing, except that item 10 was made 2.5 mills instead of 1 mill.

Against levies of executions for taxes against its property the Central of Georgia Railway Company interposed affidavits of illegality.   For the other facts see the opinion of the court.

*Lawton & Cunningham* and *G. H. Richter,* for plaintiff in error.

*D. R. Cumming,* contra.

RUSSELL, C. J.   By an agreement between the parties all issues of law and fact were submitted to the judge of the superior court, who was empowered to hear and determine all issues, either in term or vacation, with right of appeal by either party.

The State tax for 1924 was $5 per $1000, or five mills, and the valuation of the property of the Central of Georgia Railway Company in Spalding County in 1924 was $584,025.   In 1925 the State tax was $5 per $1000, and the taxable value of the property in 1925 was $624,052.   The Central of Georgia Railway Company paid all its taxes for 1925, except $8237.48, which represents a tax of $13.20 per $1000 on the assessed value of the property in Spalding County.   There were grand juries empaneled and organized at first or spring term in both 1924 and 1925 of the superior court of Spalding County.   The treasurer did not submit a statement of the financial condition of the county and the amount

of tax required to discharge the county liabilities for either of the years 1924 or 1925. Neither grand jury refused to recommend the levy of a tax sufficient to discharge any judgment which had been obtained against the county or any debt for the payment of which there was a mandamus or the necessary expenses of the year. Neither grand jury had been requested to make any such recommendation, and both grand juries adjourned without making any recommendation concerning the levy of county taxes for either year. There were no final judgments outstanding against the county at that time, nor had any mandamus been granted requiring the county to pay any debt. No grand jury of Spalding County has recommended a tax levy for that county for at least twenty years. On January 1, 1924, Spalding County had outstanding warrants totaling the sum of $34,154.26, issued during the year 1923, for general county purposes including the payment of some principal and interest on county bonds lawfully issued and for warrants issued during 1924. Likewise, for general county purposes and including payment of principal and interest on like county bonds, the county, on January 1, 1925, had outstanding warrants issued during 1924, totaling the sum of $37,451.89. In both instances these warrants were in effect purchased by the Griffin Banking Company from the holders. There were no funds available to meet them, but the warrants were not charged against the county's account at this bank, but were held by said bank until the county had deposited sufficient funds to meet them, when they were paid and charged against the county's account. The assessed valuation of all property in the county for 1924 was $7,657,310, and it would have required a levy of $4.46 per $1000 to discharge the total indebtedness referred to, provided there were no uncollected taxes coming over from the year 1923. The tax of $3.95 per $1000, referred to in item 1 of the levy, was expected to raise $30,246.37, and the balance was carried over to be taken care of in the future. In 1925 the assessed valuation was $7,774,215, and it would have required a levy of $4.83 per $1000 to discharge the total indebtedness of $37,451.89, provided there were no uncollected taxes coming over from the year 1924. The tax of $3.95 per $1000 in item 1 of the levy was expected to raise $30,708.15, and the balance was carried over to be taken care of in the future.

The proceeds of the levy made in items 3, 4, and 5 of the

order were intended to be used to discharge the ordinary, regular, annual, current expenses of the county during the year for which the tax was levied and for the purposes named in said items. The levy of .40 per $1000, made in item 8, "to pay any other lawful charges against the county," was intended to provide funds for discharging the ordinary incidental current expenses of the county not otherwise provided for in the levy, and also for taking care of expenses which could not be anticipated. The tax of $1 per $1000 in 1924 and of $2.50 per $1000 in 1925 (each levied in item 10 of the orders) to pay salaries of county agent and for educational purposes, as provided by Acts 1922, p. 81, was a county-wide tax levied upon the recommendation of the board of education upon all property in the county subject to taxation, including property in the independent school district of Griffin, and was to be turned over to the board of education to be used as follows: (in 1924) $1140 to pay the salary of a home demonstration agent, and $2400 to pay the salary of the county farm agent. It was expected that the tax would raise $7667.31; and the balance of $4117.31, after paying the said salaries, was used to maintain the county school system as a supplement to the sum raised by the 5-mill school tax levied in item 11 of the order. The demonstration agent and the county farm agent were employed for the calendar year on an annual salary, and their services could be dispensed with at the end of any twelve-months period. The City of Griffin is the only independent school system in Spalding County. The tax of $1 per $1000 in item 10, levied upon the property of the Central of Georgia Railway Company which is within the independent school system of Griffin, will raise $150.42 on a valuation of $150,424. The agreed statement of facts as to the tax of $2.50 per $1000, levied in item 10 of the order of 1925, is identical with that concerning 1924 as set forth, except as to amounts. The salaries are the same, but in 1925 the tax was expected to raise $19,435.54; and the balance of $15,895.54, after paying said salaries, was used to maintain the county school system as a supplement to the sum raised by the 5-mill school tax, as in 1924. Spalding County has adopted a system of county public schools maintained by county-wide taxation, and the tax of $5 per $1000, levied in item 11 upon the recommendation of the board of education, was levied for that purpose in pursuance of the authority granted in art. 8, sec. 4, par. 1, of

the constitution of Georgia, as amended November 2, 1920. The tax levied in item 6, "to pay expenses incurred in supporting the poor, and as otherwise prescribed by the Code of Georgia," is intended to provide funds for the support of the poor farm and for the care of the patients at a hospital owned and maintained by the city and county. In 1920 Spalding County established and has since maintained a regular force of county police appointed by the commissioners of roads and revenues for a term of one year. The salaries and expense of said police force are a part of the regular annual expense of the county, and to pay them the board has levied a tax of .50 per $1000 in item 9 of the levy.

In the affidavits of illegality and exhibits it is alleged: (a) The railway company has paid all taxes lawfully levied for 1924, except $846.83, which represents a tax of $1.45 per $1000 upon its property. The board of commissioners of roads and revenues levied a total tax of $22.20 per $1000 in 1924, levying a total of $6.45 per $1000 in items 1, 3, 5, and 8, for the payment of accumulated debts and all ordinary current expenses of the county, which levies are illegal and void to the extent of $1.45 per thousand, for the reason that 100 per cent. of the State tax is the maximum amount which a county can lawfully levy for the payment of its accumulated indebtedness and its current expenses. For 1925 the board of roads and revenues ordered the levy of a tax of $23.70 per $1000 on the property subject to taxation; and the tax of $3.95 per $1000 levied in item 1 is void, because the proceeds of the tax are not intended to be used and will not be used to pay legal indebtedness as stated, but said proceeds are intended to be used and will be used to pay incidental ordinary current annual expenses of the county not otherwise provided for in the levy. (b) If said proceeds are to be used for the purposes set out in item one, the tax is void nevertheless, because no grand jury recommended the levy of this tax; and though a grand jury was empaneled at every term of the superior court in 1925 and made general presentments, its foreman was not presented with the treasurer's statement of the financial condition of the county and the amount of tax required to discharge the county's liabilities for the year; the grand jury did not adjourn without taking any action on such statement, since none was presented to it, nor did it refuse to make recommendation sufficient to discharge judg-

ments which had been obtained against the county or debts for the payment whereof there was a mandamus, or the necessary current expenses of the year. For these reasons the board of roads and revenues were without authority to levy any tax for the payment of the county's indebtedness, except a tax for discharging judgments which had been obtained against the county, of which there were none, and debts for the payment of which a mandamus had been issued, and there were no such debts.

In ground 6 of the affidavit of illegality it is alleged: (a) The tax of $2.50 per $1000, levied in item 10, "to pay salaries of county agent and for educational purposes, as provided by the Acts 1922, p. 81," is void, because it is levied on all the property in Spalding County, including the territory within the City of Griffin, and the levy is therefore indivisible. (b) The levy is for a county purpose which is not an ordinary, regular, annual, current expense of the county, and was made without the recommendation of two thirds of the grand jury at the first or spring term. (c) The levy is void and unconstitutional, in that it violates par. 1 of sec. 4 of art. 8 of the constitution of Georgia, as amended November 2, 1920. The County of Spalding, under item 11 of the levy of 1925, did levy the sum of 5 mills or $5 per $1000 of taxable property, "to support and maintain the public schools of Spalding County outside the City of Griffin, . . the same being levied upon the recommendation of the board of education; and having levied the sum of $5 per $1000 of taxable property under the amendment to the constitution adopted in 1920, the county is without authority to levy any additional tax for educational purposes, and the levy of $2.50 per $1000 is therefore excessive, without authority of law, and beyond the power of the said county, and is unconstitutional and void in that it is violative of par. 1 of sec. 4 of art. 8 of the constitution of Georgia. The seventh ground of illegality is a contention that if the levies in items 1 and 10 are not void for the reasons above set out, then each of them is a levy to pay current expenses; that the levies to pay ordinary annual current expenses of the county, as set forth in items 1, 3, 4, 5, 6, 8, 9, 10, and 11, total 15.70 mills; that said levies are void, because they were not recommended by the grand jury of Spalding County, and, if not void in their entirety, they are void to the extent of $13.20 per $1000, by which

amount the total exceeds $2.50 per $1000, or 50 per cent. of the State tax, because each of said levies is a levy to pay an ordinary, regular, annual, current expense of the county, and the board of roads and revenues are without authority to levy a tax of more than 50 per cent. of the State tax for said purposes. In the eighth ground it is insisted that if the levy in item 1 of $3.95 is a lawful levy to pay indebtedness, then, when said levy is added to the levies for current expenses as set out in items 3, 4, 5, 6, 8, 9, 10, and 11 of the order, the total levy is $15.70 per $1000, whereas the total which can be lawfully levied for said purpose is 100 per cent. of the State tax, or $5 per $1000, and said levies are therefore illegal and void at least to the extent of $10.70 per $1000. The affidavits of illegality to both the 1924 and 1925 fi. fas. involve substantially the same questions.

The judgment of the trial judge was as follows:

"The Central of Ga. Ry. Co., by affidavit of illegality filed to certain tax fi. fas. issued by the comptroller-general and the levies of same on described property, questions the legality of certain portions of Spalding County's tax levies for the years 1924 and 1925. The Railway Company paid all taxes admitted by it to have become due and payable under the items of the levies for said years which it admits are legal levies. The issues raised, both of law and fact, were submitted to me for decision in vacation, without a jury, on agreed statement of facts, and written briefs of counsel. The issues in each are identical, except as to the amount of tax claimed to be illegally levied by the county authorities, and both cases were treated in all respects and were argued by counsel as one case, and I so treat them.

"The facts as stated are agreed on, and present no issue for determination. The difficulty in reaching a decision arises when an effort is made to decide what the law is, and to apply the law to the undisputed facts, and reach a satisfactory conclusion as to whether the two county levies are legal or illegal. In an effort to find what is the law, decisions of the higher courts in Georgia have been of no assistance to me, because of irreconcilable (by me) conflicts in them; and consequently the conclusions I have reached, and now state, have been reached by me without relying upon any particular decision of either court as authority for my conclusions (except as respects what may be termed the extra or

supplemental school tax). In my opinion neither the tax for the poor, nor the regular county-wide 5-mills tax for the support of the schools of the county can properly be considered or classed as for 'current expenses.' These tax levies should be classed as extra or special tax levies, just the same as those levied for the county police, roads and bridges and buildings, and the like. To hold otherwise would mean, in this county, that the levy of 5 mills for school purposes would exhaust the county's authority to levy for current expenses, and vice versa, as to a levy for current expenses, and result either in having no school tax, or no current expense fund, or a wholly inadequate amount in both. To hold that these are extra or special levies relieves the county of this handicap, and allows it to function orderly and adequately. With these two levies eliminated from the list of levies for current expenses, it seems clear that the levy for this purpose, in each year, is within the legal limit. And I so hold. I also sustain the levy as made in each year to pay the legal indebtedness of the county, due and to become due and past due. I also sustain all other items in the tax levy for each year, except as next hereinafter stated.

"I hold that the levy made each year under the act of 1922, p. 81, to pay salaries of a demonstration agent and to supplement the general school tax, is void under the rule announced in *Almand* v. *Board of Education,* 161 *Ga.* 911, and *Brown* v. *Martin* [162 *Ga.* 172], it being admitted that the county had levied in each year the county-wide tax of 5 mills. The levy for these purposes in 1924 was 1 mill, and in 1925 was 2.5 mills. Since the amounts in each year that these levies would raise are less than the amounts of money in such years which the railway company has refused to pay, it is entitled to deduct such amounts from the balance in each year which it has withheld and refused to pay. The balance remaining should then be paid to the tax-collector, and in default of so doing the fi. fa. should proceed therefor."

In each case the railway company excepts to that part of the orders which overruled the affidavits of illegality, and the comptroller-general excepts in the cross-bill in each case to that part of the order which sustained the attack upon the tax levied under the act of 1922 (Acts 1922, p. 81). These bills of exceptions and cross-bills involve the same questions. One concerns the legality

of Spalding County's tax levy for the year 1924 and the other for the year 1925. The only difference is that the amount of the levy in 1925 was larger than that of 1924. In each case the affidavit of illegality was overruled, except the ground thereof which attacked the levy to pay the salary of county agents as provided by the act of 1922. This ground was sustained, and the cross-bill of exceptions challenges the correctness of this ruling. With extraordinary industry and remarkable clearness counsel for both parties in these cases have presented the issue, and in support of their contentions have brought in view before us perhaps every ruling made by this court on the taxing powers delegated by the General Assembly to the counties of this State. For the purpose of abbreviating and simplifying the discussion of the several important issues presented in the main bills of exception, we shall first consider the exception contained in the cross-bills. The question involved has been so recently before us that we deem it futile at this time to elaborate the views expressed in *Almand* v. *Board of Education,* 161 *Ga.* 911 (131 S. E. 897), and *Brown* v. *Marlin,* 162 *Ga.* 172 (132 S. E. 896), both of which are the unanimous decisions of a full bench. In these cases we held that any tax levied. or sought to be levied under the act of 1922, p. 81, comes within the provisions of art. 8, sec. 4, par. 1, of the constitution, and is void if when added to the tax for school purposes levied under that constitutional provision the total exceeds the 5-mills levy therein permitted, and is also void to the extent to which it is a levy inside an independent school district.

It is earnestly contended by counsel for the plaintiff in error that a county can not levy more than 50 per cent. of the State tax without the recommendation of a grand jury for the payment of its current expenses, and that a county can not levy more than 100 per cent. of the State tax for the payment of its current expenses and its accumulated debts. It is further contended that if the levies for the support of the poor, the expenses of the county police, and the support of the school are not void because they are levies for current expenses, then they are void for want of a recommendation of a grand jury. We quote from the brief of counsel for plaintiff in error: "The levy of 3.95 mills 'to pay the legal indebtedness of the county due, or to become due during the year, or past due,' was made to pay off warrants issued

in past years. Some of these warrants were issued to pay current expenses, and others were issued to pay the principal and interest on valid county bonds. The levy is therefore attacked on four grounds:

"1. *Unpaid warrants issued in previous years to pay current expenses do not represent a 'debt' of the county for the payment of which a tax may be levied.* .

"2. The warrants issued in previous years to pay principal and interest on bonds do represent a valid 'debt,' and the record shows, therefore, that part of this levy of 3.95 mills is made to pay a valid accumulated debt, and that part is made to pay what is not a lawful 'debt' within the meaning of the constitution. So we contend that *the entire levy is void, because it does not separate the valid from the invalid items or specify the percentage applicable to each.*

"3. The only tax to pay accumulated debts which can lawfully be levied in any amount without the approval of a grand jury is a tax to pay off (1) debts originally incurred to supply a casual deficiency in revenue, and (2) debts originally incurred with the sanction of a popular vote; therefore *so much of this item as is intended to pay off warrants originally issued to discharge current expenses is void, because it is levied without the approval of the grand jury.*

"4. But, even conceding that the obligations which it is intended to discharge with the proceeds of the levy are lawfully accumulated 'debts' within the meaning of the constitution, *no levy in excess of the difference between 100% of the State tax and the current expense levy can be made for this purpose, with or without the recommendation of a grand jury, and this levy is void to the extent of at least 1.45 mills. Cf. Code sec. 507.*"

We are asked to review and overrule decisions of this court in *Wilson v. Gaston,* 141 *Ga.* 770 (82 S. E. 136), *Southern Ry. Co. v. Wright,* 154 *Ga.* 334 (114 S. E. 359), and *Southwestern R. Co. v. Wright,* 156 *Ga.* 1 (118 S. E. 552). After a very deliberate and painstaking consideration of this case and of previous decisions of this court applicable to the issues, we have reached the conclusion that the trial judge did not err either in overruling so much of the affidavits of illegality as is the subject of the main bills of exceptions or in sustaining that ground of the illegality

which is the subject of the cross-bills. We adhere to the rulings in *Southwestern R. Co.* v. *Wright,* supra, that "The proper county authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without reference to any action of the grand jury. Civil Code of 1910, § 507; *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (5) (91 S. E. 681)," and "If 100 per cent. of the State tax be not sufficient to pay the accumulated debts and current expenses of the county, the authorities have power to raise a tax for county purposes, over and above the tax of 100 per cent., . . and not to exceed 50 per cent. of the State tax for the year it is levied." We adhere to the ruling in *Wilson* v. *Gaston,* supra, and decline to overrule it as requested by the counsel. In that case it was held: "A county may, without being said to create a debt within the meaning of the constitution, contract for materials for the necessary improvement of public roads, to be paid for out of available funds in the hands of the treasurer, or out of the proceeds of taxes that have been or may be lawfully levied during the year in which the contract is made. (*a*) Where a contract of the character mentioned is made, and the goods are delivered, and a warrant is issued by the county commissioner for the price thereof, payable at a future date, and, without participation or consent upon the part of the vendor, the county applies the funds out of which the price of the goods was to be paid to other claims against the county, leaving the price of the goods unpaid, such diversion of the funds would not destroy the legality of the contract, but it would exist as a legal liability against the county. (*b*) Where the county allowed the payment of the demand to go by default, and there was no other available fund in the treasury with which to pay the same, the county was authorized during the next year to levy a tax for the discharge of the liability."

A consideration of all of the decisions of this court upon this question will clearly demonstrate that any apparent conflict is reconciled, and that any loose expressions indicating a conflict are without any weight when we consider that from a juridical standpoint these expressions are without any force or effect, because if they were in any sense rulings they were upon questions which were not at the time before the court, and consequently are mere obiter dicta. One instance of this is found in *Albany Bottling*

*Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270). There the court had before it the question as to whether the imposition of a specific tax of $50 on liquor dealers was within the provisions of the present section 508, then section 399, of the Code; and the writer of the opinion discussed at some length the provisions of that section. But it is quite obvious from a reading of the case that the proper construction of section 508 was in no way involved. The only question before the court was whether a $50 tax could be imposed upon liquor dealers by virtue of section 508. Naturally this court could not affirm the judgment of the trial court holding that a $50 liquor tax could be imposed upon a liquor dealer under section 508, which in its terms refers to an ad valorem tax of 50 per cent. on a property valuation. It is insisted that the decision in *Seaboard Air-Line Ry. Co.* v. *Wright,* 161 *Ga.* 136 (129 S. E. 646), has tended to confusion, or at least may be construed as an argument in favor of the contentions of the plaintiff in error. In that case it was held: "(b) The tax assessment in this case *did not purport to levy a tax to pay current expenses and debts of the county, as authorized by the Civil Code (1910), § 507.*" (Italics ours.) The purpose of the levy was to raise *4 mills for current expenses:* 1.5 mills for court expenses, 1 mill for salaries and commissions, 1.5 mills for miscellaneous purposes (which was admitted was intended to mean "any other lawful charge against the county"). As the question before the court only concerned current expenses, the court as stated in the headnote did not consider the meaning of § 507 nor attempt to construe § 507 as to its provisions as to accumulated debts. Nothing ruled in *Barlow* v. *Ordinary,* 47 *Ga.* 639, conflicts with our conclusions in this case, though the case was decided by only two Judges. It is conceded that 146 *Ga.* 581 (supra), is only a five-Judge case. It is therefore not controlling authority.

In *Southwestern R. Co.* v. *Wright,* supra, this court unanimously affirmed a judgment upholding the order of the authorities of Early County in levying, in items 1 and 2, five and sixty-five one hundredths mills (5.65 mills) to pay debts of the county. Item 2 imposed a levy of 1 mill "to pay the bonded indebtedness and interest." Whatever the difference of opinion as to the meaning of the word "*debt,*" able counsel for the plaintiff in error admits that a liability approved by a plebiscite and validated by the court

is a "debt" within the meaning of the constitution as construed with the utmost strictness which the plaintiff in error demands. Item 2 imposed an additional levy of 4.65 mills "to pay the legal indebtedness due, or to become due during the year 1921, or past due," and no point was made that this item was improperly designated or denominated as a "debt." The exception was that the levy was too large, for the reason that a county could not levy the 100 per cent. referred to under section 507 of the Code unless it included both debts and current expenses within its provisions. Adding the items which neither refer to nor provide for any other purpose than the payment of debts, it is obvious that this court had before it a case in which 5.65 mills had been levied for the sole purpose of paying debts, and that this was .65 mills more than the 100 per cent. referred to in section 507. This 5.65 mills ($5.65 per $1000) included nothing for current expenses. However the assessment, in other items, included levies for current expenses as follows: To pay sheriffs and other officers' fees, 1.75; to pay bailiffs, witnesses, fuel, servant hire, etc., .30; to pay jurors their per diem, .45; making the total levies for current expenses, 2.50 mills. This was exactly 50 per cent. of the State levy for taxes in 1921, and section 508 allows a levy of 50 per cent. for county purposes. Current expenses are included within county purposes. *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 722 (122 S. E. 35). So this court was authorized to assume, and consequently held (the question of the current expenses having been legally disposed of under the provisions of section 508), that the next question was, could a county levy more than 100 per cent. of the State tax to pay debts? It is obvious to any reader of the facts as fully stated (156 *Ga.* 1 et seq.) that this was really the only question for decision after the court had reached the conclusion expressed in headnote 2: "The proper county authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without reference to any recommendation of the grand jury. Civil Code of 1910, § 507; *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (5) (91 S. E. 681). And see, in this connection, *Sheffield* v. *Chancy,* 138 *Ga.* 677 (75 S. E. 1112)."

In *Central of Georgia Ry. Co.* v. *Wright,* 156 *Ga.* 13 (118 S. E. 709), where it was said that the aggregate of the tax for both

purposes must not exceed 100 per cent. under section 507, it was also said that "The tax authorized by this section is an extra or special tax, and is in addition to the tax which the county can levy for county purposes under the Civil Code (1910), § 508." So the statement of the court that the "aggregate of the tax for both purposes must not exceed 100 per cent." was altogether obiter and of no binding effect. The record was presented to this court by certified questions from the Court of Appeals. Three questions were asked. The first was as follows: "Where, without a recommendation from the grand jury, an order is passed by the proper authorities imposing a county tax levy, indicating the levy of certain items to pay for current expenses, aggregating more than 50 per cent. of the State tax, is such levy . . void to the extent that it exceeds 50 per cent. of the State tax? See Civil Code (1910), § 508; *Wright* v. *Central of Georgia Ry. Co., 28 Ga. App.* 356 (111 S. E. 61)." This was the only one of the three questions answered, for in both the second and third questions it was stated by the Court of Appeals that further answers were not desired unless the first question was answered in the affirmative. This court answered the question in the negative. In the circumstances the question asked and the only authoritative answer was that a "levy of certain items to pay for current expenses aggregating more than 50 per cent. of the State tax . . is not void to the extent that it exceeds 50 per cent. of the State tax." That was the only question involved in the case; and the court ruled that under the provisions of section 507, by which a tax may be levied for both the payment of debts and current expenses, there might be a levy of only 50 per cent. for current expenses. The Court of Appeals did not ask whether under the code section the aggregate tax for both purposes could exceed 100 per cent. of the State tax, and therefore no ruling of the court upon that subject was invoked; and under our oft-repeated rulings this court will not undertake to answer questions that are not asked. The question whether, in levying taxes to make the payments required under the provisions of section 507, the county might apportion whatever they levied so as to levy more than 50 per cent. of the State tax for current expenses, without avoiding the levy, could be answered in the negative, whether the levy for both debts and current expenses exceeded in whole 100 per cent. on the State tax

as well as if the levy of the county for those two purposes was confined to 100 per cent. We understand it to be the established rule and doctrine in this State, that if there is an irreconcilable conflict in the decisions of a reviewing court, the older ruling must prevail. A very diligent search has not enabled us to discover any constitutional provision or legislative enactment which has varied the rule of juridical construction to which we have just referred, and which is based upon the very reasonable assumption that the court, having deliberately passed judgment upon an issue of gravity and importance, would not reverse itself unless and until it was convinced that the first decision was wrong. Consequently, it is held that the conflict presented by the junior judgments was caused by a failure to adhere to the older adjudications, and is attributed to an oversight on the part of the court, a fault which can only be remedied by the court retracing its steps and returning to the ancient landmark. And so we hold that whatever has been said by the court on the questions now before us, subsequently to the rulings in *Sheffield* v. *Chancy* and *Wilson* v. *Gaston,* supra, must yield to these senior judgments.

Item 1 of the order fixing the levy for 1925 is: "To pay the legal indebtedness of the county due, or to become due during the year, or past due, 3.95 mills." By the terms of section 507 of the Code, "When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year." In *Southwestern R. Co.* v. *Wright,* supra, this court in a decision by a full bench held: "The proper county authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without reference to any recommendation of the grand jury." When the question then before the court is taken into consideration, it will be seen at once that the question now before us was not then presented for adjudication. Naturally and properly the court did not undertake to decide whether, in case of necessity in order to meet its just obligations, a county was authorized to levy a tax of more than 100 per cent. of the State tax to pay this debt, when the question before it was whether *without the recommendation*

*of a grand jury* the county authorities could levy any tax at all, under the provisions of section 507. No question was raised as to the size of the levy; and whether a county could levy *more* than 100 per cent. of the State tax was certainly not involved when the levy in question was only $4.65 per $1000 for debts under item 2 of the levy in the *Southwestern R.* case, supra.

It was agreed by the parties in this case that there were outstanding liabilities incurred in 1923, amounting to $30,708.15, and similar liabilities incurred in 1924 and payable in 1925, amounting to $37,451.89; and it is admitted it would require a levy of $4.46 per $1000 in 1924 to discharge the debts which had accrued in that year, but which were created in 1923. It is likewise admitted that it would require a levy of $4.83 per $1000 to discharge the accumulated debts which were incurred in 1924, but which were liabilities for which provision should be made in the year 1925. For both of the years 1924 and 1925 the levy actually assessed, $3.95, was within the 100 per cent. authorized by the provisions of section 507. The levy imposed in 1924 was $0.54 per $1000 less than the county would have been authorized to levy for the purpose of paying accumulated debts, and in 1925 it was $0.17 per $1000 less than would have been authorized for that purpose had the indebtedness been so large as to require the levy of the entire 100 per cent. We think the circumstances of this case clearly show that section 507 of the Code is not to be construed to limit the power thereby conferred, so as to permit county authorities to impose only an additional levy of 50 per cent. of the State tax over and above the 50 per cent. prescribed by § 508. Properly construed, § 507 authorizes the authorities of a county to levy 100 per cent., and more if necessary, to pay the current expenses of the county and its accumulated debts. If the levy for county purposes authorized by section 508, as in this case, is exhausted by the requirements of the county's current expenses for the year for which the levy is made, the county authorities are then authorized to levy whatever (in their discretion) may be necessary to pay the accumulated debts; provided the levy for that purpose shall in any event be sufficient to pay 25 per cent. of such debts. So construing the meaning of section 507, the authorities of Spalding County in this case might have made a levy of less than $3.95 per $1000, but they were not required to do so;

for if in their discretion it was for any reason to the advantage of the county to have sooner discharged its entire indebtedness, the county authorities could have levied a tax for this purpose of $4.46 per $1000 in 1924, and of $4.83 per $1000 in 1925. The provisions of section 507 make mandatory the requirement that such debts shall be paid in four years. This does not prevent the county authorities from making a provision by which the accumulated debts may perhaps be discharged in two years, as seems to be the intention of the county authorities in the case at bar. Section 507 does not purport to prescribe or fix any rate of taxation. It is a mandatory provision for the payment of a county's just obligations, in an exigency not caused by any fault of its creditors. The levy of a tax necessarily follows the mandate of section 507 that "When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county *and the debt in one year* [italics ours], they shall be paid off as rapidly as possible, at least twenty-five per cent. every year," for only by a tax levy can the money be obtained. It must be implied from the language of the mandate which orders debts to be paid that a tax must be levied; but from the very fact that the circumstances in no two counties are likely to be identical, the amount or percentage of the levy to be imposed by the county can not be fixed and invariable.

As has frequently been pointed out by this court, the scheme of the framers of the constitution was to avoid the creation of debts, by closing the transactions of each year by the payment of its obligations year by year; but it must be assumed that they knew that the present section 507 was inserted in the first Code and had been retained in the Code of 1873. Art. 7, sec. 7, par. 1, of the constitution must therefore be construed in the light of the following facts: (1) The framers of the constitution knew the provisions of section 507 (formerly section 515 of the Code of 1873, § 549 of the Code of 1868), and that this was an emergency measure designed to meet unforeseen exigencies. (2) They knew that circumstances might arise under which, although there was no casual deficiency, a county might, either by the oversight or mismanagement of the authorities, be without the actual cash with which to discharge just obligations imposed by contracts in which

the county had received full value in services or property. (3) They knew that the levy of a tax was not the creation of a debt. .*Commissioners* v. *Porter Mfg. Co.,* 103 *Ga.* 613 (supra) ; *City of Dawson* v. *Waterworks Co.,* 106 *Ga.* 696 (32 S. E. 907). So, in order to enforce the scheme by which large county indebtedness should not be created, the framers of the constitution left unimpaired the provisions of section 515 of the Code of 1873, now section 507, as a means to provide for the contingency above referred to. In our opinion this section aids in the enforcement of what was in the minds of the framers of the constitution, because a tax levy is the surest preventive of a bonded debt, as the number of court-houses which have been erected in Georgia by direct taxation clearly demonstrates. The provision which leaves the amount of the levy to the discretion of the county authorities in case of emergency is not unwise, if there be any solvency in the theory that democracy guarantees home rule and local self-government. If the discretion with which the county authorities are clothed should in any case be abused by the levy of a tax, by reason of the fact that there should have been no necessity for this tax, the county will at last have done nothing but discharge its honest obligations, and the people will find redress in electing other and different persons to control the disposition of the county finances.

The ruling in the *Southwestern* case, supra, is based upon previous decisions of this court in *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (supra), and *Sheffield* v. *Chancy,* 138 *Ga.* 677 (supra), as well as the fact that the expressed terms of section 507 of the Code do not require a grand-jury recommendation for the purpose of empowering the county authorities to levy this tax which is necessary to enable the county to pay its debts. We are aware that great stress was laid in many of the earlier cases upon the necessity for a recommendation by two thirds of the grand jury; but the adoption of the Code as a whole had the effect of destroying prior rulings upon the subject. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). It would be very interesting as a matter of history to follow the transposition of the code sections by which section 543, now 508 of the Code of 1910, which in the Code of 1868 naturally preceded section 549, now section 507, was made to follow it, as in any system of numbering 508 must follow 507; but this would ac-

complish no useful purpose. The Code as written was adopted by the General Assembly, and as section 508 appears in the Code its meaning is extremely clear. "The ordinaries have power to raise a tax for county purposes, *over and above* the tax they are hereinbefore empowered to levy, and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied: Provided two thirds of the grand jury, at the first or spring term of their respective counties, recommend such tax." One of the effects of the transposition was to remove any question as to the necessity of a recommendation of the grand jury in regard to the 100 per cent. tax permitted under section 507; and the other was to make provision in section 510 (by the passage of the act approved September 5, 1881 (Acts 1880-81, p. 41)) for the levy of the additional 50 per cent. tax in the event there was no grand-jury recommendation as required in section 508. It appears from the agreed statement of facts that grand juries were duly empaneled at the spring term of each of the years 1924 and 1925, and that they made no recommendation. It does not appear that they refused to make a recommendation. There were no debts of the county which had been reduced to execution, nor any debts for the payment whereof a mandamus had been granted. It is argued that nevertheless the recommendation of a grand jury is essential. We can not concur in this opinion. While it is true that the grand jury did not refuse to make a recommendation, and there were no debts in judgment and no mandamus to require the payment of any debt, it seems to us that the terms of section 510 of the Civil Code fully authorized the county authorities to levy the 50 per cent. of the State tax to which we have referred. That section declares: "if from any cause such grand jury is not impaneled" (in these cases they were impaneled) or if "they adjourn without taking any action thereon, . . such ordinaries may levy the necessary tax without such recommendation." Under the agreed statement of facts the county authorities in the present cases had the right to levy the tax of 2.5 mills without the recommendation of a grand jury. It was held by this court in *Pope* v. *Matthews*, 125 *Ga.* 341, 348 (54 S. E. 152), that the action of the grand jury does not of itself *levy* the tax but merely *recommends* it, and provision is made by this section for cases where the grand jury fails to act.

We hold that the levy for current expenses in this case is within the limit prescribed by section 508 as above quoted. Item 3 of the order levies .7 mills to pay sheriffs', jailers', or other officers' fees. Item 4 prescribes a levy of .9 mills for expenses of the county for bailiffs, non-resident witnesses in criminal cases, fuel, servant hire, stationery, and the like. Item 5 levies .5 mills to pay jurors a per diem compensation, and item 8 levies .4 mills to pay any other lawful charges against the county. The sum or aggregate of these four items is 2.5 mills, which, it will readily be seen, is precisely one half of the 5 mills which it is agreed was the State tax for the year 1925. This court in *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 722 (supra), held that items 3, 4, and 5 were "current expenses," and that item 8 of section 513 may fall under the head of current expenses. Since the aggregate of these current expenses is precisely one half of the State levy for taxes and each of the items is held to be a current expense, the only objection remaining to these items is that there was no recommendation authorizing them and consequently the levy is void. This objection can not be sustained, because, as we have shown, section 510 as amended by the act of 1881, supra, expressly obviates the necessity for a recommendation in any instance where the circumstances are precisely those of this case—where the grand jury failed to take any action whatever. Learned counsel for the plaintiff in error insists that there can be no legal indebtedness under the terms of subsection 1 of section 513 of the Code, except such debts as may be created to supply a casual deficiency in revenue, and such as have been sanctioned by a vote of the people. In support of this contention he cites *City of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696 (supra). We can not agree that the term "legal indebtedness" of a county is confined in its meaning to such narrow limits. The term "legal indebtedness" in § 513, properly construed, includes other legal liabilities than current expense and bonded debt. A legal indebtedness on the part of a county arises whenever a county by contract receives either material or services of value, to be paid for out of available funds in the hands of the treasurer or out of the proceeds of taxes that have been or may be lawfully levied during the year in which such contracts are made. Where a county has not paid such a demand and there is no available fund in the treasury with which

to pay it, the county authorities may during a subsequent year levy a tax for the discharge of such liabilities. *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (2) (supra), citing *Wilson* v. *Gaston,* 141 *Ga.* 770 (supra).

It is not to be denied that there are a few decisions of this court which casually appear to sustain the contention of counsel to the effect that a debt can not be created by a county since the adoption of the constitution of 1877, except to supply a casual deficiency in revenue, or a debt that has been approved by a vote of two thirds of the voters of the county. But all of these decisions, though not expressly referred to or overruled, have been modified by other decisions which have placed a different construction and meaning upon the word "debt" as employed in section 507 of the Code. Perhaps the first of the decisions calling attention to the peculiar and special meaning of the word *"debt"* as used in the constitution was that rendered by Mr. Justice Beck in *Sheffield* v. *Chancy,* 138 *Ga.* 677 (supra). In that case it was ruled as follows: "Inasmuch as the injunction granted in the present case may have the effect of preventing the county authorities from levying a tax necessary to discharge the legal indebtedness of the county, and as the judgment granting the injunction was based upon an erroneous construction of the law appertaining to the controlling question involved in the case, the judgment is reversed and the case remanded for another hearing." The first item in the tax levy in the *Sheffield* case was: "To pay indebtedness due, or to become due during the year, or past due, 2 mills." As appears from the record, the debt referred to in this item was composed of debts, "exclusive of about $3000 to the First National Bank of Arlington," in the sum of $12,921.55, as follows: "To Dr. J. H. Crozier, borrowed money, $2080.00. To Mrs. R. A. Chipstead, borrowed money, $1000.00. To bonds and interest due Jan. 1, 1911, $3250.00. To Good Roads Machine Co. (contract), $2000.00. To Disinfectant Co. (open account 1910), $1046.00. To Bank of Arlington, $3081.00." Total, $15,632.95. It further appeared from the record that the revenues for public buildings, etc., would be $9257.80; that the commissioners had expended in that year in the erection of bridges $2030.00, for repairing the court-house $325, none of which building and repairs exceeded $300; that there were other bridges which would

cost in the aggregate $9600, which were to be erected as soon as funds were collected for that purpose, and in the early part of 1912; that there were no funds on hand for the maintenance of the poor on January 1, 1911; that the levy for 1910 for paupers was $534.18 less than the amount expended for that purpose; that the commissioners borrowed $1945.35 with which to maintain the poor of the county for the year 1911; that there was outstanding against the county this obligation and $339 in unpaid warrants issued to the parties themselves. No recommendation was made during the spring term, 1911, by the grand jury with regard to the levying of any taxes for 1911, nor did any prior or subsequent grand jury convening in 1911 make any recommendation in regard to levying taxes. Affidavits were introduced showing that there was an indebtedness against the county, January 1, 1911, for debts incurred by the county during 1910 and becoming due during the year 1911, aggregating $15,512; that at the beginning of the year there was nothing to the credit of the pauper fund of the county; that the county commissioners had to borrow money to meet the current expenses of the year, that this money was borrowed of Mrs. Chipstead and Dr. Crozier, and enough of this borrowed money was used to pay off the warrants issued to the paupers, and the balance of $339 was outstanding and unpaid. In the opinion of the court delivered by Mr. Justice Beck it was said:

"In the original code the levy of taxes for certain specified purposes, such as the erection of court-houses, jails, etc., was authorized without recommendation of the grand jury. By § 481 of that code it was declared: 'Justices of the inferior court have power to raise a tax for county purposes, over and above the tax they are hereinbefore empowered to levy, and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied, provided two thirds of the grand jury at the first or spring term of their respective counties recommend such a tax.' By § 483 it was declared: 'If from any cause such grand jury is not empaneled, or they adjourn without taking any action thereon, or they refuse to make such recommendation sufficient to discharge any judgment that may have been obtained against the county, or any debt for the payment whereof there is a mandamus, or the necessary current expenses of the year, such justices may levy the

necessary tax without such recommendation.' By § 485 provision was made for a creditor to compel a tax to be levied or for a taxpayer to resist it. Section 486 stated the purposes for which county taxes should be assessed. One of them was: 'To pay the legal indebtedness of the county, due, or to become due during the year, or past due.' After this followed the section upon which the present controversy mainly rests. It reads as follows: 'When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year.' It will be seen at a glance that these sections are far from clear, and are difficult if not impossible to reconcile with each other in all respects. The authority to levy a tax of fifty per cent., upon recommendation of the grand jury, over and above the special tax already authorized, is followed by a provision in case they fail or refuse to make the recommendation, which mentions the payment of any debts in judgment or for which there is a mandamus, as well as current expenses of the year. This apparently contemplates primarily a recommendation of the grand jury to levy a tax to pay such debts, and the action of the justices of the inferior court only in the event they fail to make recommendation. Here, also, only a particular class of debts is mentioned. On the face of it, the second section above quoted contains no express limitation as to amount. But this court held that the two should be construed together, and that the authority of the justices, or their successors, the ordinary or county commissioners, to levy without recommendation was not more extensive than the power to levy with a recommendation. *Waller* v. *Perkins, 52 Ga.* 234. The next section, in stating the purposes for which county taxes may be levied, refers to the 'legal indebtedness of the county,' and does not confine it to a debt which may have been reduced to judgment or in regard to which a mandamus may have been obtained. Then follows the provision already quoted, which no longer adheres to the fifty per cent. limitation, but provides that if debts have accumulated against the county so that 'one hundred per cent. of the State tax' can not pay the current expenses and the debts in one year, they shall be paid off as rapidly as possible, at least twenty-

five per cent. each year. . .

"The codifiers of the Code of 1895 took the section with reference to accumulated debts from the position which it had occupied since the adoption of the Code of 1863, and placed it along with sections touching special and extra taxes, in advance of the section authorizing the ordinaries to raise a tax for county purposes, 'over and above the tax they are hereinbefore empowered to levy, not exceeding fifty per cent. upon the amount of the State tax for the year it is levied,' upon recommendation of the grand jury; and in that position it was adopted in the Code of 1895 and that of 1910. Perhaps the reason for the transposition arose from the radical change made by the constitution of 1877 in regard to the incurring of indebtedness by counties and municipalities. Prior to that time debts had been incurred with great freedom, and sometimes unwisely and disastrously. The constitutional convention determined to put a check upon extravagance or the incurring of indebtedness by such political bodies. They therefore provided that no county or municipal corporation should incur any new debt, except for a temporary loan to supply casual deficiencies of revenue, not to exceed one fifth of one per cent. of the assessed value of the property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose. It was also declared that at or before incurring any bonded indebtedness the county or municipality should provide for the assessment and collection of an annual tax, sufficient in amount to pay the principal and interest of said debt within thirty years from the date of the incurring of said indebtedness. Civil Code (1910), § 6564. As the constitution thus required a permanent provision for the collection of a tax to pay bonded indebtedness, as to such indebtedness it superseded and rendered unnecessary any recommendation of a grand jury in regard to it. As to indebtedness other than bonded indebtedness, this was also prohibited, except upon an election, and excepting a loan to meet casual deficiencies. It being thus provided that debts could not be incurred merely at the will of the ordinary or commissioners, but required the sanction of a popular vote, it is probable that the codifiers therefore thought that a complete change had been made in the status of debts which could be legally incurred by the county, and that they thereafter occupied a fixed position. . . Thus by the constitu-

tion counties are prohibited from incurring any indebtedness except in the manner therein pointed out, and they are required to make provision in advance in regard to the payment by taxation of bonded indebtedness. And by the acts of the legislature similar provision as to specifying the times of payment of debts other than bonded indebtedness is required. This worked so radical a change in the old system of creating debts that it would be useless to say that the county was bound to provide in advance how and when the debt should be paid and the people should ratify that declaration, and yet the payment should depend upon a recommendation of a grand jury. . . We are of the opinion, therefore, that under the present status of the law, if there is a legal indebtedness of a county incurred in 'a manner authorized by law, it is contemplated that it shall be paid in the manner previously fixed, and that the tax levy of the difference between the current expenses and one hundred per cent. upon the State tax can be made without recommendation of the grand jury. This is reinforced by the requirement that at least twenty-five per cent. shall be paid in each year, and the fact that the creditor may bring mandamus to compel the levy of the tax and any taxpayer may contest the proceeding."

In *Citizens Bank* v. *Rockdale County,* 152 *Ga.* 719 (111 S. E. 434), which was the unanimous decision of a full bench, Mr. Justice Hill, quoting from the opinion of Mr. Justice Cobb in *City of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 717 (supra), said: "And if, during the period in which the *expense* was incurred and the tax was levied, by some oversight the levy was not of sufficient amount to pay the expense, the deficiency, casual in its nature, which was contemplated by the constitution arose and could be supplied by a temporary loan." The language quoted from Mr. Justice Cobb was intended and is accepted as an apt definition of the term "casual deficiency," but it does not for that reason fail to be also explanatory and definitive to a certain extent of a "legal indebtedness" which may exist, so as to include items which are really in strict parlance also current expenses. It will be noted that in the definition given by Judge Cobb the casual deficiency is first denominated as "the expense," and in *Citizens Bank* v. *Rockdale County,* this court as then constituted unanimously overruled the contention that a failure to meet the

current expenses of the county could not create a casual deficiency, and ruled that "if a casual deficiency did in fact exist and for that reason there was no money in the treasury with which to pay current expenses, the county could make a temporary loan to supply such casual deficiency, even if the money thus obtained was used to pay current expenses. Making such a temporary loan would not create a debt within the meaning of the constitution, provided a sufficient amount to discharge the liability can be raised by taxation during the current year." This certainly would permit the payment of an item of indebtedness for "county purposes" (even though it might be properly classified as a current expense), which would entail upon the county liability for its payment. In such a case, and where the county for the payment of this item had drawn a warrant which it had not redeemed, the liability should and properly can be extinguished by the levy of a tax in a subsequent year to raise money to pay this debt, or this accumulation of debts if there was more than one liability. *Wilson* v. *Gaston,* 141 *Ga.* 770 (supra); *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (supra). A county warrant issued by the proper county authorities upon the county treasury is as much an evidence of indebtedness or at least an acknowledgment of liability as a note signed by municipal authorities.

It was held in *Mayor &c. of Hogansville* v. *Planters Bank,* 147 *Ga.* 346 (94 S. E. 310), that a demand note did not create a debt in violation of art. 7, sec. 7, par. 1, of the constitution, so as to defeat the enforcement of the liability evidenced thereby. We think the principle which controlled that ruling sustains the validity of the first item of the levy in the instant case. To quote from the opinion in the case cited: "During the year 1914 the Mayor and Council of Hogansville procured from the Hogansville Light Plant lights which were used for lighting the streets of the town, at an agreed price of $150 per month. At the end of the year there remained unpaid, for the lights thus furnished, the sum of $1400. Taxes were levied by the municipal corporation in the year 1914, to pay the Hogansville Light Plant for the lights contracted for, together with other current expenses. The taxes not having been paid into the treasury of the corporation, on February 1, 1915, a demand note was executed by the corporation as evidence of the amount due for the lights thus furnished. This note was

transferred by the Hogansville Light Plant to the Planters Bank, which brought suit on the note. The corporation demurred to the petition, which set out substantially the above-stated facts, on the ground that the note created a debt in violation of art. 7, sec. 7, par. 1, of the constitution (Civil Code, § 6563). The demurrer was overruled, and the corporation excepted. We do not think that under these facts the giving of the demand note by the Mayor and Council of Hogansville was the creation of a debt inhibited by the constitution of the State. When the town through its constituted authorities lawfully contracted for the lights, paid a portion of the contract price therefor, and gave its demand note for the remainder due, with the right and reasonable expectation of collecting, by execution or otherwise, the taxes assessed for this purpose against the citizens of the town, with which it expected to pay off the note, the execution of such note can not be said to create a debt against the city and to be in violation of the constitutional inhibition which declares that 'The debt hereafter incurred by any county, municipal corporation, or political division of this State, except as in this constitution provided for, shall not exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies or revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law.' *Wilson* v. *Gaston,* 141 *Ga.* 770 (82 S. E. 136); *Monk* v. *Moultrie,* 145 *Ga.* 843 (90 S. E. 71). It is not insisted that the mayor and council had no authority to contract for the furnishing of lights for the city, or that the price for furnishing them was unreasonably high. It is only contended that the execution of the note was invalid as being obnoxious to the provision of the constitution above quoted. But under the circumstances of this case it can not be held that the municipality, in giving the note as evidence of the amount due for the contract price of the lights, created a debt within the meaning of the constitution."

The ruling in the *Hogansville* case illustrates what we have already stated, that liability for current expenses may sometimes create a casual deficiency, and that a just liability on the part of

a county or other municipal corporation which can not be discharged in any other way than by a tax levy authorizes and requires such levy under the provisions of the first subsection of section 513 of the Code. We bear in mind the decisions of this court in *Hall v. County of Greene*, 119 *Ga.* 253 (46 S. E. 69), and *McCord v. City of Jackson*, 135 *Ga.* 176 (69 S. E. 23), holding that there is no authority in law which authorizes county authorities to borrow money to meet ordinary current expenses; and nothing herein ruled conflicts with these and similar decisions. There is a marked difference between borrowing money to meet a present or anticipated current expense, and discharging by a tax levy liabilities for a necessary past current expense, no matter how the liability arose. See *McGregor v. Hogan*, 153 *Ga.* 474 (2) (112 S. E. 471). The purposes for which county taxes shall be assessed are stated in the Code, section 513, as follows: "1. To pay the legal indebtedness of the county due, or to become due during the year, or past due. 2. To build or repair court-houses or jails, bridges, or ferries, or other public improvements, according to the contract. 3. To pay sheriffs', jailers', or other officers' fees that they may be legally entitled to, out of the county. 4. To pay coroners all fees that may be due them by the county for holding inquests. 5. To pay the expenses of the county, for bailiffs at courts, non-resident witnesses in criminal cases, fuel, servant hire, stationery and the like. 6. To pay jurors a per diem compensation. 7. To pay expenses incurred in supporting the poor of the county, and as otherwise prescribed by this Code. 8. To pay charges for educational purposes, to be levied only in strict compliance with the law. 9. To pay any other lawful charge against the county." In *Waller v. Perkins*, 52 *Ga.* 233, Judge McCay said: "The tax for the support of the indigent poor, authorized by the act of 1818, has never needed the recommendation of the grand jury. *It has always been at the discretion of the inferior court or ordinary.*" (Italics ours.) So we are of the opinion that the assessment of a tax for the poor is not necessarily a current expense. It will be seen that in the original act of 1792 the counties were authorized to levy one fourteenth of the general tax, and in 1818 one eighth; and by the act approved September 29, 1881, the county authorities were "authorized to levy a tax for the support of the paupers of their counties, which shall not exceed twenty-

five per cent. upon the amount of the State tax for the years such pauper tax is levied." Acts 1880-81, p. 49. The levy of this tax is altogether "discretionary," as stated by Judge McCay; and while it is true, as stated in Scripture, that "the poor have ye. always with you," since a gift to the poor is essentially a charity, it has always been left to the discretion of the ordinary as to when, how, and to whom and how much will be *given* from funds raised by public taxation. It could be possible in some counties that in some years there would be no necessity for the bestowal of these alms. In other years misfortunes might so increase the number of those actually in want that their support, though essentially a charity, would be a good governmental policy in the protection of property and the prevention of crime; but we hardly think it can be classed as a "current expense," because it is not one of these expenses which are absolutely necessary in carrying on government.

The most important question for determination in this case is whether the county is permitted, under the provisions of sections 507 and 508 of the Code, to levy a tax of more than 100 per cent. of the State tax levy in the aggregate, or whether, construing the two sections together, only 100 per cent., or an amount equal to the State tax, can be levied under the provisions of these two sections. It is insisted that from the allowance of 100 per cent. under the provisions of section 507 only the remaining per cent. after deducting the rate allowed under the terms of section 508 can be levied; in other words, that if the maximum of 50 per cent. is legally levied under the provisions of section 508, then no more than 50 per cent. of the State tax remains to be levied under the provisions of section 507. This contention is the principal ground upon which the plaintiff in error bases its contention in the cases at bar, and counsel cite several authorities in the decisions of this court in support of his position. "Extra," extraordinary, or special taxes, no matter which term is used to denominate the taxes not essentially necessary for carrying on the ordinary functions of government, are not to be computed in the consideration of the question whether a tax levy is excessive when the construction of the term "current expenses" as used in section 507 is involved. While the levy authorized under the provisions of section 508 is denominated by the term "county

purpose," which is the general term including all of the ordinary purposes of government, the levy authorized by the terms of that section is confined to two specific purposes—current expenses and accumulated debts. This means that if the levy under section 508 for county purposes (and of course current expenses are included in county purposes: *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 722, supra) is not sufficient to supply the necessary funds to carry on the county government, a per cent. necessary to raise whatever further sum may be needed for that purpose may be included together with the assessment levied to pay accumulated debts, so as to make the two, if necessary, equal 100 per cent. But both before and since the legislation now embodied in sections 507 and 508, provision was made for extra, local, and special tax levies which had no relation whatever to debts or to current expenses, thus demonstrating at once that these extra levies designed to meet needs not originally considered as essentially governmental (that is, not necessary to guarantee or protect life, person, or property) were within the power of the State to grant.

At the time the Code of 1861 was prepared there was ample authority (exclusive of the act of 1821) for the levy of the taxes necessary for the ordinary requirements of a county. The following general tax statutes were in force at that time: 1. The act of February 21, 1796, providing for the levy of a tax not to exceed one fourth of the State tax, one half to be applied to building court-houses and jails, and the other half to the support of the poor and to building bridges. Due to subsequent acts, this act remained in 1860 only as authority to levy a tax of one eighth of the State levy for building court-houses and jails. 2. The act of December 4, 1799, providing for the levy of a tax for building and keeping in repair public bridges. No limit other than the necessary sum. 3. The act of December 5, 1801, providing for the levy of a tax to pay fees of sheriffs, jailers, and coroners, and also for the general support and maintenance of prisoners. No limit other than the necessary sum. 4. The act of November 24, 1818, providing for the levy of a tax not to exceed one eighth of the State levy, for the support of the poor. 5. The act of December 19, 1821, providing for the levy of an "extraordinary" tax, not exceeding fifty per cent. of the State levy, for county purposes, on recommendation of the grand jury.

6. The act of December 27, 1843 (amended in 1858 and 1859), providing for the levy of an educational tax, limited only by the discretion of the recommending grand jury. 7. The act of February 27, 1856, providing for an annual tax sufficient to compensate grand and petit jurors, upon recommendation of the grand jury. 8. The act of December 15, 1859, providing for the levy of a tax to provide for the execution in private of criminals, where same is necessary. There was no limit to this tax, other than the necessities of the case. In addition to the foregoing acts, it should be noted that an act of 1815 directed the justices of the inferior court to equip the clerks of the different courts with the necessary books and indices, and directed payment for same to be made out of county funds. See Cobb's Digest, p. 191. And also an act passed in 1836 directed the payment out of county funds of compensation for non-resident witnesses summoned on behalf of the State. Cobb's Digest, p. 279. Following the reasoning in *Tucker* v. *Green,* 34 *Ga.* 374, it would seem necessarily to follow that the power to levy taxes for these purposes was necessarily implied from the legal duty imposed of making the directed payments. The first of these was the provision for the care of the poor, by the act of 1792, amended and increased by the act of 1818, and finally repealed and superseded by the act of 1881. So also, by the act approved December 27, 1843 (Cobb's Digest, p. 5), the justices of the inferior courts of the several counties were authorized to levy and collect an extra tax to educate the poor children of their respective counties; and it was provided that "said sum shall be kept separate from all other county funds and used for no other purpose whatsoever." It is to be noted that it is called an "extra tax;" and having been passed twenty-two years after the act of 1821, it is plain that it was not intended to interfere with or affect the operation of the provisions now contained in sections 507 and 508. The provision as to county police, as already stated, depends upon the act of 1914, which in so many words makes it an extra tax "over and above" all other taxes. In view of the history of the legislation itself, as well as in view of the fact that it would be altogether impracticable in this progressive age to classify these items as current expense and yet bring them within the limit of 150 per cent. upon the State tax, we feel constrained to overrule the con-

tention of the plaintiff in error that these items or any one of them are included within the term current expense. In the levy before us, 5 mills levied for education and 1.25 mills for the poor and .5 mills for the police would make 6.75 mills, and deducting this from 7.5 mills would leave only .75 mills from which to support such purely governmental activities as the courts, the fees of officers, fuel, servant-hire, stationery, and the like, as provided in paragraphs 3, 4, 5, and 6 of section 513, as held in *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 722 (supra), to say nothing of item 9, which "may or may not fall under the head of current expenses accordingly as the county purpose for which the tax there specified is levied is a regular, ordinary expense or not."

*Judgment affirmed on both bills of exceptions. The other Justices concur, except as hereafter stated.*

HILL, J., concurring specially. I agree that under the facts of this case more than one hundred per cent. can be levied up to the amount of the tax levy in this case (which is less than 150 per cent.) ; but I do not think we ought to hold that *any* amount over 100 per cent. can be levied; for that question is not now involved. See *Southwestern Railroad Co.* v. *Wright,* 156 *Ga.* 1 (supra).

GILBERT, J., specially concurring; dissenting in part.

1. The proper county authorities may levy a tax of not exceeding 100 per cent. of the State tax to pay *accumulated debts* and *current expenses* of the county, without a recommendation of the grand jury. *Sheffield* v. *Chancy,* 138 *Ga.* at p. 686; *Southwestern R. Co.* v. *Wright,* 156 *Ga.* 1 (2). In answering a question certified by the Court of Appeals, this court held: "Under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county, but a levy to pay both accumulated debts and current expenses or a levy for either of these purposes must not exceed 100 per cent. of the State tax." *Central of Ga. Ry. Co.* v. *Wright,* 156 *Ga.* 13. It must be conceded, as is contended by plaintiff in error, that Civil Code § 507 does not, in terms, authorize the levy of any tax. That section does not contain any reference to a tax levy of any kind for any purpose. It reads: "When debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law,

3

can not pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per ·cent. every year." Obviously that section merely imposes a duty on county authorities to pay "at least twenty-five per cent. every year" of *accumulated debts and current expenses,* when 100 per cent. on the State tax will not pay all of such obligations. It does contain an assumption that the county authorities must use an amount equal to 100 per cent. on the State tax, if necessary, for the payment of "accumulated debts and current expenses." Necessarily a tax must be levied to raise such an amount of money. The inference was stronger when in earlier codes this section was placed immediately after section now numbered 513. Indeed, it would seem that the duty so to do is necessarily implied. "The delegation of power to tax need not be express, but may be implied from the grant of other powers which can not be exercised without taxation. The rule is the same as in case of delegation of power to municipal corporations." Cooley on Taxation (4th ed.), § 119. "It is sometimes said that 'there is no such thing as taxation by implication.' This means merely that municipalities have no inherent power of taxation, but must look to the constitutional or statutory grant for their authority to tax. It does not mean that the power to tax may not be implied, in a proper case, from the grant of other powers requiring for their exercise the imposition of taxes. The authority to tax, however, is never left to implication unless it be a necessary implication. In a proper case, the power to tax need not be expressly conferred on municipalities, but may be implied from the grant of other· powers. For instance, unless the constitution requires · the delegation of the power to tax to be express, and in the absence of constitutional limitations or restrictions, it is almost universally held that authority to tax is included in express power to contract municipal debts for specific objects; but the power to tax exists in such a case only when such a grant is deemed to have been within the intention of the legislature, and hence there is no authority to tax where the statute authorizing the debt makes provision for payment other than by taxation. So there is no implied authority to tax to pay municipal debts where such debts were not contracted pursuant to express authorization of the legislature." Cooley on Taxation (4th ed.), § 123.

I am not unaware of the general rule that statutes levying taxes upon the citizen will be strictly construed. There is also another rule, that abuse of taxing power will not be presumed. However, it has been several times held that under section 507 such a tax was authorized. Should it be considered that such decisions were unsupported in logic and reason, these decisions have long been recognized, and the General Assembly, throughout all these years, has failed to enact any legislation for the purpose of correcting the rule laid down by the court. The taxes authorized in sections 508 and 510 are in addition to the tax authorized in section 507. We were formally requested to review and overrule the following cases, holding as above stated: *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581; *Southern Ry. Co.* v. *Wright,* 154 *Ga.* 334; *Southwestern R. Co.* v. *Wright,* 156 *Ga.* 1. The request was denied, the court adhering to the decisions. We are therefore bound by them.

2. The phrase, "accumulated debts," as used in the Civil Code (1910), § 507, and under § 513, par. 1, referred to as "legal indebtedness of the county due or to become due during the year, or past due," means debts or temporary loans to supply casual deficiencies of revenue, as contemplated in article 7, section 7, paragraph 1, of the constitution of Georgia (Civil Code (1910), § 6563) ; and does not include obligations legally incurred by the county for current expenses or county purposes other than debts or loans to supply casual deficiencies of revenue within the above constitutional provision, whether considered during the year in which they were lawfully contracted or in some year thereafter when still binding obligations of the county due to non-payment as contemplated. *Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696; *Seaboard &c. Ry. Co.* v. *Wright,* 157 *Ga.* 722. Under our decisions all lawful obligations are "legal liabilities," and the county authorities are bound to levy a tax to pay them. The tax therefor is levied as "other lawful charge against the county," falling under paragraph 9 of section 513. But they are not debts as contemplated in the constitution, nor "legal indebtedness" falling under section 513, par. 1. "With a legal indebtedness and the terms of payment fixed upon a county in a manner prescribed by the constitution, with the right in the creditor to proceed by mandamus to compel the levy of a tax for the purpose of its pay-

ment, with a provision for the levy of the difference between the amount of the current expenses and the amount of the State tax, and a requirement for the payment of at least twenty-five per cent. per annum, the recommendation of the grand jury could neither prevent nor assist in the carrying out of the law in this regard, and it would be more ornamental than substantial. If the indebtedness is a contractual one and is legal under the constitution and law, it requires no recommendation of the grand jury to levy a tax for the difference between current expenses and one hundred per cent." *Sheffield* v. *Chancy,* supra. We are dealing in the present case with contractual debts. In *Wilson* v. *Gaston,* 141 *Ga.* 770 (supra), the suit was for iron piping used in constructing culverts. At the time the piping was delivered a warrant for the agreed price was issued, payable during the year. When the warrant fell due, all moneys in the treasury provided for its payment had been applied to other purposes, on account of *unusual* expenses which the treasurer had paid indiscriminately; and the warrant was not paid. The suit was based on the ground that the commission was not authorized to create a debt within the meaning of the constitution. It was not denied that the commission could legally buy the piping. The court held that the transaction amounted to a "legal liability," but "did not involve the creation of a debt by the county within the meaning of the constitution." The only contention interposed was not sound, and hence the judgment. The circumstances showed that the liability was due to a casual deficiency in revenue. It appears from the agreed statements of facts in the present case that the County of Spalding, in paragraph 1 of the tax levy, included, "to pay the legal indebtedness due or to become due during the year, or past due," large sums incurred as current expenses of the county, and in the levy the respective amounts of each, "debts" and "current expenses," were not indicated. Therefore I am of the opinion that the entire levy in this paragraph is void. *Sullivan* v. *Yow,* 125 *Ga.* 326; *Garrison* v. *Perkins,* 137 *Ga.* at p. 758. See *Commissioners* v. *Porter,* 103 *Ga.* 613, 618, for reference to phrase, "other lawful charges." Any ruling to the contrary collides with the constitution of Georgia. Civil Code (1910), § 6563.

3. The proper county authorities "have power to raise a tax for '*county purposes,*' over and above the tax they are herein-

before empowered to levy, and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied: Provided, two thirds of the grand jury, at the first or spring term of their respective counties, recommend such tax." Civil Code (1910), § 508. It will be observed that the tax authorized in this section is for "county purposes." "County purposes" is a broader term than "current expenses." For elaboration see *Seaboard &c. R. Co.* v. *Wright,* supra. In the act of the legislature (Ga. Laws 1821, p. 115) from which this section was taken it was designated as "a tax extraordinary of the general State tax." In the Code of 1860 and in all subsequent codes, the language just quoted has been omitted. That it is a tax for county purposes, and a tax over and above the tax authorized by the preceding section of the act and code, must be conceded. I agree with counsel for plaintiff in error that a portion of the words quoted above,—"extraordinary of the general State tax,"—leads to confusion, and I have been unable to arrive at any satisfactory solution of the problem as to why those words were employed. Possibly the words were inadvertently used because of some ill-adjusted amendment or some error of a clerk or of the printer. Possibly the codifiers in all of the codes omitted the quoted expression because the code section was clearer without those words, and because they tended to confusion and doubt. The Code of 1860 was prepared under legislative act by David Irwin, T. R. R. Cobb, and Richard H. Clark, all eminent and learned lawyers, especially fitted for the duty imposed. That duty was "to prepare for the people of Georgia a Code, which should, as near as practicable, embrace in a condensed form the laws of Georgia, whether derived from the common law, the constitution, the statutes of the States, the decisions of the Supreme Court, or the statutes of England, of force in this State." In the report to the legislature of the three commissioners named above as the codifiers, it was said: "Thus interpreting the act of the legislature prescribing their duties, the commissioners entered upon the discharge of those duties, seeking not only to condense and arrange the verbose and somewhat *chaotic* mass of the statutes of Georgia, but also to interweave therewith those great leading principles of jurisprudence, necessary to fill out and make perfect the body of our laws, of which the statutes constituted but disjointed parts." (Italics mine.)

In *Sheffield* v. *Chancy,* supra, it was said that the question of county taxation under §§ 507 and 508 was "far from clear." It is interesting to note that counsel for both plaintiff in error and defendant in error have made the claim in their very scholarly briefs that the decisions of this court on the question involved left the law thereof in a "chaotic" condition; plaintiff in error insisting that said condition begins with the decision in *Wright* v. *Southern Ry. Co.,* supra, where it is claimed this court first held that under section 507 the county authorities were authorized to levy a tax of 100 per cent. of the State tax, to pay accumulated debts and current expenses. Counsel for defendant in error insist that the "chaotic" condition existed long before that decision, but that the matter was clarified and the "chaotic" condition ended with the decision in the last-cited case. I fear that the law here involved will continue to appear not entirely clear to some whose duty it will be to levy taxes or to resist such levies.

4.    Under the Civil Code (1910), § 510, county authorities are authorized to levy a tax without a recommendation of a grand jury, but the authorization is for specific purposes:  (1) to discharge any judgment that may have been obtained against the county, (2) to pay any debt for the payment of which there is a mandamus, and (3) for the *necessary* current expenses of the year." (Italics mine.)  From the language of this section it will be seen that the taxes here authorized are to meet an emergency, and are limited strictly to those things which are absolutely essential to enable the county to go forward until further authority is obtained.  Judgments already obtained against the county must be paid; a mandamus must be obeyed; and lastly, while current expenses are provided for, they are limited to *necessary* current expenses.  No other taxes are authorized to be levied under this section, whatever may be the needs or apparent needs of the county, or whatever may be the judgment of county officials as to the merits of some enterprise deemed beneficial to the public.  Moreover, while the amount of this tax is not expressly limited in the code section, under decisions of this court it has been limited to 50 per cent. of the State tax.  The limit is placed upon the ground, that, reading all the sections together and considering the limitations in section 508, the legislature did not intend an unlimited tax to be levied for the limited purposes named in section

510.  *Sheffield* v. *Chancy,* supra; *Waller* v. *Perkins,* 52 *Ga.* 234.

The majority opinion, in discussing section 510, quotes as follows: "if they [the grand jury] adjourn without taking any action thereon,  . .  such ordinaries may levy the necessary tax without such recommendation." This language will lead to confusion, because a portion of the section is omitted which is essential to a proper understanding of it. To say that under section 510 the "necessary tax" may be levied, without also stating that the "necessary tax" is also specified in the same section, will be misleading. The purposes for which the tax may be levied are as stated above.

5.· The ruling by the majority that under the Civil Code (1910), § 507, without a grand-jury recommendation, a tax of more than 100 per cent. on the State tax may be levied to pay accumulated debts and current expenses of the county, is not required in the case, as may be seen by reference to the statements of facts preceding the majority opinion. It is therefore obiter dictum, and may lead to further confusion.

The foregoing views lead me to dissent from the rulings made by the majority in headnotes 2 and 4, and in the corresponding divisions of the opinion, as well as from the affirmance of the judgment excepted to in the main bill of exceptions. I concur specially in the other headnotes and corresponding divisions of the opinion.

HINES, J. I dissent from the startling proposition announced by the majority of the court in the second and fourth headnotes· and in the corresponding portions of the opinion. The principle thus announced is this: "A county may levy more than 100 per cent. of the State tax, without the recommendation of a grand jury, for the payment of accumulated debts, 'when debts have accumulated against the county, so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year.'" From this it follows as a necessary consequence that there is no limit to the amount of tax which a county may levy to pay accumulated debts of the county; and the members of the court who announced the above principle frankly admitted that this consequence followed from their ruling. It must be conceded, and can not be successfully denied, that the proper county authorities

can not levy any tax unless such levy is expressly or by necessary implication authorized by the constitution or some statute of this State. The majority find authority for their ruling in section 507 of the Civil Code of 1910. The conclusion of the majority is erroneous, for two reasons. One is, that, if the question were now an open one, they misconceive and misconstrue this section. The other is, that this court, by its previous decisions rendered by full benches, has construed this section and held directly to the contrary of the holding of the majority in this case. That section does not expressly authorize the levy of any tax; but by necessary implication it provides for the levy of a tax when debts have accumulated to such an extent that one hundred per cent. on the State tax will not pay the current expenses and the debt in any one year, in which event such debt shall be paid off as rapidly as possible, and at least twenty-five per cent. thereof every year. The authority to levy a tax being thus necessarily implied by this section, for what amount can such tax be levied? Is there any limit to the amount of tax that can be levied thereunder? This section refers to "one hundred per cent. on the State tax." This necessarily means that a tax of one hundred per cent. on the State tax is impliedly authorized by this section, and can be levied for that amount when debts have accumulated, for the dual purpose of paying current expenses and accumulated debts. So we have held, as will be hereinafter shown, that this section authorizes a tax not exceeding one hundred per cent. of the State tax. But it is said that this section provides that, if one hundred per cent. of the State tax will not pay accumulated debts and current expenses, the debts must be paid off as rapidly as possible, and in any event to an amount equal to twenty-five per cent. thereof annually; and it is urged that this section can not be construed to only confer authority for the levy of a tax of one hundred per cent. on the State tax, as twenty-five per cent. of the accumulated debts may exceed the funds which could be raised from the levy of such tax. This part of the section makes no reference to the levy of a tax, but only provides the method of the expenditure of the funds arising from the tax designated in this section. Evidently the codifiers who put this provision into the Code of 1861, which has appeared in totidem verbis in each succeeding Code, never contemplated that the situation would ever occur when fifty per cent.

of the State tax, under section 508, and one hundred per cent. of the tax under section 507, would not be sufficient to pay the expenses incurred for county purposes and twenty-five per cent. of accumulated debts. They never dreamed that the funds arising from the levy of these two taxes would not be sufficient in any one year to pay the expenses incurred for county purposes, and twenty-five per cent. of the accumulated debts. In fact and in effect this section provides for the levy of a tax of one hundred per cent. on the State tax each year for four years to pay accumulated debts, and thus authorizes during four years the levy of taxes amounting to four hundred per cent. of the State taxes, the levy in any given year not to exceed one hundred per cent. of the State tax. In these circumstances it never entered into the minds of the codifiers that the time would ever arise when a tax of one hundred per cent. of the State tax, levied annually for four years and amounting in the aggregate to four hundred per cent. of the State tax, would not be sufficient to pay accumulated debts. If such an exigency ever arises, it is one for which the legislature has not provided. At most it is a legislative casus omissus. So I am of the opinion that the proper construction of section 507 is that a tax to pay accumulated debts can not exceed one hundred per cent. of the State tax; and that this court was correct in heretofore putting this construction upon this section.

The determination of the question of the amount for which a tax under section 507 could be levied came before this court in *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (5); and this ruling was made upon the question: "County authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without any reference to a recommendation of the grand jury. Civil Code (1910), § 507." Here the ruling is in direct conflict with the principle announced in the fourth headnote of the present decision; but said case was not by a full bench, the then Chief Justice of this court being absent when it was decided. The question came before this court again in *Blalock* v. *Adams,* 154 *Ga.* 326 (114 S. E. 345), and the court made this ruling: "The proper county authorities can legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses." This decision was by a full bench of six Justices, including the

Associate Justices who now join in the ruling from which I dissent. The present Chief Justice was not then a member of the court. The ruling in that case was based upon the decision in *Wright* v. *Southern Ry. Co.,* supra. This question again came before this court in *Southwestern Railroad Co.* v. *Wright,* 156 *Ga.* 1, and *Central of Georgia Railway Co.* v. *Wright,* 156 *Ga.* 13. In the first of these cases this court held: "The proper county authorities may legally levy a tax not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses of the county, without reference to any recommendation of the grand jury. Civil Code of 1910, § 507; *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (5) (91 S. E. 681)." In the second of these cases the court made this ruling: "Under the Civil Code (1910), § 507, the proper county authorities can levy a tax of 100 per cent. of the State tax to pay current expenses of the county, but a levy to pay both accumulated debts and current expenses or a levy for either of these purposes must not exceed 100 per cent. of the State tax." In all of the above-cited cases, except the first, the decisions were by full benches, and the rulings in the latter cases were all put upon the ruling in the case first cited. Thus in three full-bench decisions, the principle announced in *Wright* v. *Southern Ry. Co.,* supra, was followed and approved. All of the Justices who concur in the ruling to which the writer excepts, except the present Chief Justice, joined in the rulings made in all of these cases; and the present Chief Justice concurred in the rulings made in the last two of these cases.

This ruling in the present case can not be differentiated from the rulings in the cases cited. The majority, or at least three of the Justices, cite section 507 of the Code to support the ruling embraced in the fourth headnote. That section provides for the levy of a tax for the payment of accumulated debts and current expenses. We have held in the cases cited that a tax levied under this section to pay accumulated debts and current expenses can not exceed one hundred per cent. of the State tax. It takes a bold flight in judicial aeronautics, or a wonderful feat of judicial acrobatism, to hold that this court was right in holding, in the decisions cited, that this tax could not exceed one hundred per cent. of the State tax for the two purposes of paying accumulated debts and current expenses, and to hold in this case that under said section

a tax exceeding one hundred per cent. of the State tax can be levied for one of these purposes, that is, the payment of accumulated debts. This seems to the writer to be illogical and thoroughly unsound. This is shown by the following syllogism: (1) Major premise. Under section 507, a tax not exceeding 100 per cent. of the State tax can be levied to pay accumulated debts and current expenses. (See cases cited.) (2) Minor premise. The tax which the majority hold the county is authorized to levy under this section is one for the payment of accumulated debts. (3) Conclusion. A tax for the payment of accumulated debts exceeding 100 per cent. of the State tax can be levied under this section to pay accumulated debts, without limitation. The conclusion does not follow from the premises, and is unsound.

Moreover, the decisions cited in support of this dissent, as has already been stated, were, with the exception of the first case, by full benches. Under the constitution of this State they thus became binding, and can not be overruled or materially modified except with the concurrence of six Justices. Acts 1896, p. 42; 5 Park's Code, § 6207. The ruling set out in said headnote purports to be one made by the majority of this court; but in fact it is not a ruling of the majority. The Chief Justice, Presiding Justice Beck, and Justice Atkinson agree to said ruling; but they do not constitute a majority of the court. Mr. Justice Hill holds that the question ruled is not involved in the case, and for this reason does not join in this ruling. Mr. Justice Gilbert and the writer dissent from this ruling. For this reason said headnote and the corresponding division of the opinion should not go out as embodying a ruling made by the court. In this situation the alleged confusion existing in the decisions of this court will be confusion worse confounded.

I concur in the judgment of affirmance; but I do not put this concurrence upon the ruling from which I dissent.