### 34577. B. F. GOODRICH COMPANY *v.* ARNOLD.

CARLISLE, J. 1. "The Workmen's Compensation Act makes the finding of the board upon the facts final and conclusive, and in the absence of fraud such finding cannot be set aside by any court, if there is any competent evidence to support it. Code, § 114-710; *Georgia Casualty Co.* v. *Martin,* 157 *Ga.* 909 (122 S. E. 881); *Maryland Casualty Co.* v. *England,* 160 *Ga.* 810 (129 S. E. 75); *Bituminous Casualty Co.* v. *Jackson,* 68 *Ga. App.* 447 (23 S. E. 2d, 191)." *Maryland Casualty Co.* v. *Hopkins,* 71 *Ga. App.* 175 (30 S. E. 2d, 357).

2. "The weight and credit to be given to the testimony of the witnesses and also the conflicts in the evidence . . . [are] matters for determination by the board. *Continental Casualty Co.* v. *Bennett,* 69 *Ga. App.* 683 (26 S. E. 2d, 682); *Liberty Mutual Insurance Co.* v. *Williams,* 44

*Ga. App.* 452 (161 S. E. 853); *Bituminous Casualty Co.* v. *Jackson,* supra." *Maryland Casualty Co.* v. *Hopkins,* supra, p. 177.

3. "While competent expert testimony is entitled to great weight, it is not so authoritative that either court, jury, or commission is bound to be governed by it, since it is advisory merely and intended to assist them in coming to a correct conclusion. Consequently courts, juries, and commissions, in determining the issues they are called upon to settle, may and should take into consideration all the surrounding facts and circumstances attending the subject-matter of the inquiry." *Blanchard* v. *Savannah River Lumber Co.,* 40 *Ga. App.* 416, 424 (149 S. E. 793).

4. Under an application of the foregoing rules, the superior court did not err in affirming the award of the State Board of Workmen's Compensation granting compensation for the claimant's loss of vision in his right eye. The claimant testified positively that something flew into, or was blown into, his eye while he was at work; that a fellow employee examined his eye with dirty, greasy hands, and wiped the eye with his shirttail; that he suffered constant pain for several months thereafter; that he had had no trouble with the eye prior to that time; that he had received compensation for injury only once in a period of some twenty-one years; that he reported the injury at once to his superior, who sent him to the company doctor who thought nothing was seriously wrong with the eye; and that he continued to have constant pain in the eye and consulted a series of physicians, some of his own choosing and others chosen by the employer. All of these physicians, who were opthalmologists, testified in the case. They were in accord, with one exception, that the alleged injury did not cause the claimant's loss of vision. Their theories of why this was so were quite variant, ranging from malingering, hysteria, allergy, self-inflicted or accidentally inflicted caustic or acid in the eye, to herpes zoster opthalmicus. We think, therefore, that the trial director, whose findings were affirmed by the board, was authorized from all the facts and circumstances to find that there was a causal connection between the injury to the eye, received during the course of his employment, and the loss of vision in that eye, and that the injury arose out of his employment. It does not affirmatively appear that the trial director did not consider the herpes zoster opthalmicus theory. He says that he considered all the theories. The physician who presented the herpes theory at no point in his testimony stated that the injury to the eye could not have caused the herpes zoster opthalmicus. He stated that the sliver of steel would not have caused it. Therefore, it remains that the claimant, before the injury, could see from the eye, with which he had had no trouble prior to the alleged injury; following the injury he was in constant pain for a period of several months; and at the time of the hearing he had lost the vision of his right eye. The director was authorized to disregard the conflicting medical testimony and draw his conclusion from the chain of events, facts, and circumstances attending the claimant's loss of vision in the right eye.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*

DECIDED APRIL 22, 1953.

66

*Jones, Williams, Dorsey & Kane,* for plaintiff in error.
*George D. Stewart,* contra.

Upon the hearing of the claim for workmen's compensation of Howard Arnold for the loss of his right eye, a trial director of the State Board of Workmen's Compensation made the following findings of fact and entered the following award:

"It was agreed and stipulated that Howard Arnold was an employee of the Martha Mills Division of the B. F. Goodrich Company on October 8, 1951. It was denied that he sustained an injury by accident which arose out of and in the course of his employment.

"I find as a matter of fact that his average weekly wage was $73.27. I further find as a matter of fact that this claimant sustained an injury by accident which arose out of and in the course of his employment on October 8, 1951, when something either blew or flew into his eye in the due course of his employment.

"I further find that his helper, Ed Elliott, with his dirty hands and a dirty shirttail, wiped or attempted to wipe something out of this man's eye and admitted that the shirt could have been worn by him from one day to a week.

"I further find as a matter of fact that this injury was immediately reported to his superior and he was sent to Dr. Kellum who put drops in his eye and he continuously returned for treatment for about ten days. He was then sent to Dr. Martin, an eye specialist, who treated him five times and then dismissed him, saying his eyes would be all right.

"I further find as a matter of fact this claimant was treated by some five different doctors who testified and admitted that the claimant complained and contended there was something in his eye from the beginning.

"I further find as a matter of fact that the claimant's wife further substantiated his testimony testifying as to the claimant's injured eye being red, swollen and watering and heard his continuous complaints; put the medicine in the eye according to directions and witnessed his agony from the date of the injury.

"I further find as a matter of fact that his doctor, Dr. Kellum, who examined him, placed drops in his eye and testified he did not see anything in the eye except small particles of floating pus. He put some 20 percent fluorescein, which is a standard dye [into his eye]; he examined it but did not see any foreign body in the eye; then gave him aureomycin drops; that on his two visits the eye looked about the same and he changed the drops and gave him penicillin dissolved in sodium sulfanilate and told him to return the next day; on his return, which was four days later, the eye didn't seemed improved or worse; he then changed the medicine to sulfathiazole salve which he was to put in his eye several times a day and he gave him three injections of penicillin, 300,000 units in all in each dose. His eye still did not look any worse or any better. He had his nurse check the claimant's vision which was 20/200. He then had him sent to Dr. Martin.

"He did not see him again until November 15 at which time his eye had made a remarkable change for the worse. It was his opinion that the claimant had some kind of chemical burn to the extent of a second or third degree [burn]. He had him use boric acid and gave him aureomycin. [He] saw the patient again on the 16th and 17th, and on the 17th gave him an antibiotic serum. Saw him again on the 31st and on that date gave him one gram of adrenalin in a saturated solution of boric acid. It was his impression, on first seeing him, that he had nothing severely wrong, but had what is called conjunctivitis which he thought was due to infection; he later thought he had an allergy to dust or food.

"I further find this claimant was sent to Dr. William O. Martin, Dr. Phinizy Calhoun, Dr. DeWitt W. Pritchett, and Dr. Benjamin M. Chambers.

"Dr. Pritchett admitted that he found a small particle which appeared to be a fragment of steel just inside the lower eyelid on the claimant's third visit. It was his opinion this particle could not have been there for the entire time for which this claimant had been treated and complained of.

"I further find as a matter of fact there is considerable conflict and confusion in the evidence in this case; some of the doctors contending that this man was a malingerer and that he

placed the steel in his eye and finally he put acid of some kind in his eye in an effort to blind himself and with the idea that he possibly might be able to recover in a law suit.

"I have given much careful study and consideration to all of the facts in this case and on one side, here is an intelligent and straight-forward mechanic who had more than twenty years continuous and faithful service to his employer with only one report of injury, an injury to the other eye more than ten years ago.

"This man's average weekly wage is $73.27. He had been injured before and drew compensation. He knew that he would be unable to recover more than a mere pittance; to wit, $24 per week, less than one-third of his average weekly wage and that for only a short period of 100 weeks.

"He testified in a straight-forward, clear-cut manner, and I think he was telling the truth. This was further substantiated by the testimony of his wife, and it was still further substantiated by his helper, Ed Elliott, who admitted that with his dirty and greasy hands he wiped this man's injured eye with his dirty and germ-filled shirttail.

"On the other hand I have some five doctors who treated this man and some of them contend there was nothing in his eye but their own actions kept the man coming back continuously over a period of more than two months. They put many different kinds of medicine in this claimant's eye. The final result of their treatments were successful but the man is now blind.

"In order to believe the doctors I must completely ignore the physical facts in this case. This man has the appearance of an honest and conscientious worker who was regularly employed and making more than three times as much as he could hope to recover per week—and that for only a short time, to wit, 100 weeks.

"I must either believe that a man would be willing to blind himself and to cut out the beauties of nature, the sunlight and yea the faces of his loved ones, to swap all of this for eternal night, in order to be able to recover less than one-third of his average weekly wages, and that for only a short time. Also, a man would be a glutton for punishment who is willing to undergo [self-inflicted?] excruciating and terrible nerve-racking pain.

"That on the one side. On the other as the only other reasonable conclusion, this first doctor, who examined claimant, did it in a casual way, thinking possibly it was not serious but a mere particle of dust, put drops in the eye, allowing the injured eye to become infected.

"Some of these doctors attempted to advance the theory that this man was law-suit conscious; he had drawn compensation ten years ago for a previously injured eye which clearly refutes any such theory.

"I further find many people were allergic to some of the medicines used in this claimant's eye, and two of them are extremely poisonous, zinc sulphate and potassium iodide.

"After careful consideration of all this evidence I do not believe that a man as intelligent looking and with the salary he could make would attempt to blind himself.

"I further find as a matter of fact and conclude as a matter of law that where one of two lines of reasoning must of necessity prevail, on the one side positive testimony substantiated by the physical facts, and common sense, [and] on the other, theories, or mere opinions, even though by experts, and honestly given, the opinion evidence must fall.

"After further carefully considering all of this I find as a matter of fact this claimant is now totally blind in his right eye, and his blindness was brought about as the result of an accident and injury which he sustained in the due course of his employment on October 8, 1951.

"Would that I had the wisdom of Solomon that I might unravel some of these conflicting and confusing theories and statements—I know not what else. Combined with the injury, whether it was allergy from the medicine or drops used in his eye, systemic conditions, along with the infection that finally produced the blindness. But, by far, the superior weight of reasonable and believable testimony shows that this blindness had its origin in this accident and injury. All of the things combined produced the blindness. I cannot say what or how many contributed to it, but this I do know, the man could see how to perform his work for more than twenty years and now he is blind in his right eye.

"I further find as a matter of fact and conclude as a matter

of law that this case is controlled by *Southern Railway Co.* v. *Tankersley*, 3 *Ga. App.* 548, which was further followed in a case almost identical with this one: *Atlantic Steel Co.* v. *Mc-Larty*, 74 *Ga. App.* 300.

"After a careful consideration of all the evidence and confusion I can now understand the wisdom of the court in the case of *Southern Railway Co.* v. *Tankersley*, as I think in this case, only by following the rule [there] laid down, that you may believe the claimant (if his testimony is worthy of belief, in preference to a whole college of physicians) for only in this way would justice and right prevail.

"Wherefore, based upon the above findings of fact and conclusion of law. applicable thereto the Martha Mills Division of B. F. Goodrich Company, the employer and self-insurer, will pay the employee-claimant the sum of $24 per week beginning one week from the date he ceased work, for a period of ten weeks as temporary total disability, and are further ordered to pay the sum of $24 per week for a period of 100 weeks, beginning as of the date temporary total disability ceases, covering a permanent and irrecoverable loss of the sight of the right eye.

"And further ordered to pay any and all doctor bills arising out of and because of said injury not to exceed the statutory limit of $750."

On appeal to the State Board of Workmen's Compensation, the award of the trial director was affirmed, and, on appeal to the superior court, the award of the board was affirmed, and·the employer excepted.