35167. ROYAL INDEMNITY COMPANY *et al. v.* HUMPHRIES.

· DECIDED JUNE 14, 1954—REHEARING DENIED JULY 13, 1954.

*Marshall, Greene & Neely, Burt DeRieux, J. W. Waldroup,* for plaintiffs in error.

*Gibson & Maddox, Geo. E. Maddox,* contra.

CARLISLE, J. 1. By virtue of the provisions of the Smith-Lever Act of 1914 (7 U. S. C. A. § 341 et seq.) the position of Cooperative Agricultural Extension Agent came into being. By the terms of that act certain Federal funds were appropriated by the Congress of the United States for cooperative agricultural extension work in the various States and Territories of the United States. These funds were made available to those States and Territories which assented to the act and appropriated a like sum for such work. The State of Georgia assented to the act in the same year (Ga. L. 1914, p. 1243), and designated the Trustees of the University of Georgia, now the Board of Regents, to receive the Federal grants for such purpose, as the Federal act required that the agricultural extension work be carried on in

cooperation with the various State colleges of agriculture. In the general appropriations act of the following year (Ga. L. 1915, Ex. Sess., p. 53), and in every general appropriations act since, the General Assembly specifically earmarked, from the funds available to the University of Georgia, and later the University System, certain funds to match the Federal funds for the purpose of carrying out the provisions of the Smith-Lever Act. The Board of Regents has therefore control of the State and Federal funds for such work and general supervision of the work itself.

Since the Board of Regents, through its control of the College of Agriculture, is charged with the responsibility of effectuating the provisions of the Smith-Lever Act, and controls the funds for so doing, no other conclusion can be reached but that the Board is ultimately charged with the responsibility of employing the personnel for such purpose. Indeed, by the terms of the Smith-Lever Act, as amended, a certain percentage of the funds appropriated for cooperative agricultural extension work must be devoted to the payment of the salaries of county agricultural extension agents. 7 U. S. C. A. § 343a.

The General Assembly in 1922 (Ga. L. 1922, p. 81) sought to have the various counties in which these agricultural agents worked supplement the salaries of such agents. This act was declared unconstitutional, however, in *Central of Ga. Ry. Co. v. Wright*, 165 *Ga.* 1 (139 S. E. 890), and this constitutional defect was not remedied until 1945 (Code, Ann., § 2-5701; Code, Ann. Supp., §§ 92-3701, 92-3717). We had, however, during all of this time county agents who were furnished under the terms of the Smith-Lever Act. It seems clear to us, therefore, that the Board of Regents, through the College of Agriculture, controls the general scope of the agricultural extension work and is empowered to employ and discharge county agents, while the counties may, if they choose to levy the tax therefor, supplement the salaries of the county agents.

From the evidence adduced on the hearing the trial director was authorized to find that the claimant's contract of employment was with the Board of Regents and that he was considered a member of the faculty of the College of Agriculture of the University of Georgia. The Agricultural Extension Division of

the College of Agriculture controls the broad sweep of the agricultural extension work in Georgia and determines what programs of work will best effectuate the purposes of the Smith-Lever Act; that division of the College of Agriculture plans the program to be carried out in each of the counties in accordance with the needs of the county and in the light of the general program laid down for the State as a whole; the claimant made his weekly, or monthly, and annual reports to that division; while he was at liberty to carry out the program established at hours and times which best suited the needs of the farmers of the county, still the Board of Regents, through the College of Agriculture, held the power to transfer him to other work, replace him, or discharge him. Under the rule stated in *City of Brunswick* v. *Taylor*, 87 *Ga. App.* 751 (75 S. E. 2d 203), the director was authorized to find that the claimant was an employee of the Board of Regents.

2. While there was medical evidence to the effect that the claimant's condition at the time of the hearing was the result of diseases which he had suffered prior to the date of the alleged injury, and the evidence was in sharp conflict as to whether he had suffered any disabling injury on that date, there was sufficient evidence to authorize the trial director to find that he had engaged in unusually strenuous physical exercise on that date and that he sustained a cerebral.thrombosis as a result of such exercise, that is to say, that he suffered what is commonly known as a "stroke". *Hartford Accident &c. Co.* v. *Waters*, 87 *Ga. App.* 117 (73 S. E. 2d 70); *B. F. Goodrich Co.* v. *Arnold*, 88 *Ga. App.* 64 (76 S. E. 2d 20). The evidence authorized the finding, therefore, that the claimant sustained an injury which arose out of and in the course of his employment. The award of compensation will not therefore be disturbed.

From what has been said above, it follows that the superior court did not err in affirming the award of the State Board of Workmen's Compensation.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*