A91A0480. ELBERT COUNTY BOARD OF COMMISSIONERS v. BURNETT.
(408 SE2d 168)

SOGNIER, Chief Judge.

James Burnett, in the course of his employment as an investigator with the Elbert County Sheriff's Department, responded to a call involving a violent confrontation between two people and, while trying to break up the fight, was kicked repeatedly in and around his head by a man under the influence of PCP. Burnett was treated for this work-related injury and missed one day of work. He resigned from his job approximately three months later and began to work for his father. He subsequently sought workers' compensation benefits from Elbert County claiming that he had suffered organic brain damage causing cognitive and psychological problems as a result of the work-related injury. The administrative law judge denied his claim on

the basis that Burnett's problems predated his work-related injury and Burnett failed to carry his burden of proving with his doctors' depositions that his problems were caused by the work-related injury. The State Board of Workers' Compensation remanded the claim for receipt of additional evidence, then upon consideration of the entire record made the findings and conclusions of the ALJ its own. The Superior Court of Elbert County reversed, and we granted the employer's application for discretionary review.

Appellant contends the superior court erred by reversing the Board's award because there was some evidence to support it. The record reveals that in addition to his own testimony detailing the degeneration in his mental functions in the months following the work-related injury, appellee presented the depositions of a licensed psychologist, a psychiatrist, and a neurologist. Dr. Paul J. Cardozo, Ed.D., the psychologist, testified that he interviewed appellee several times and administered numerous psychological tests in order to arrive at his diagnosis that appellee was suffering from organic mood disorder which in his professional opinion was likely caused by the work-related injury. He testified that while physical tests such as MRIs and CAT scans could indicate "hard medical evidence" of brain damage, psychological testing also was used to reveal the effects of organic brain impairment, and that all of the tests administered to appellee indicated that appellee had incurred such damage.

Dr. William W. Orr, Jr., M.D., the psychiatrist, testified that he regularly treats appellee and that based upon his extensive contact with and testing of appellee, his diagnosis of appellee was organic mood disorder caused by the work-related injury. He testified that in his opinion while there had been some underlying residual problems stemming from appellee's pre-injury depression over his divorce, appellee had resolved those matters and that his pre-injury depression was unrelated to his current problems.

Dr. Scott D. Cooper, M.D., the neurologist, testified that he conducted a neurological evaluation of appellee, seeing him four times over a four month period. He opined that he could conclude with reasonable medical certainty that appellee's current brain dysfunction and medical problems were related to his work-related injury and diagnosed the problem as post concussive syndrome. He related appellee's problems to organic brain damage which he stated he detected through neuropsychological testing conducted by Dr. Jo Ann Power, a neuropsychologist, and through physical testing by means of an EEG (which showed abnormal slowing of brain waves indicative of diffuse brain dysfunction) and an MRI scan of appellee's cervical spine (which showed an abnormality consistent with trauma). He noted that the neuropsychological testing brought out certain specific problems, but that even "factor[ing] out" that testing, appellee "has

some definite organic problems." Regarding appellee's pre-injury depression, Dr. Cooper testified that "the results of the neuro-psychological testing and the EEG are compatible still with the post concussive syndrome rather than depressive syndrome," specifically rejecting the suggestion that depression could cause the type of results his evaluation had uncovered.

Appellant adduced the deposition testimony of Dr. Vivian S. Auerbach, Ph.D., a clinical neuropsychologist. She testified that she reviewed the records of appellee, including those compiled by the above-mentioned doctors, and that based on that review as well as on tests an assistant administered to appellee and her interview with him lasting at most two hours, in her opinion appellee's problems were not caused by the work-related injury and were not consistent with organic brain damage, but instead were the result of a recurring major depression unrelated to appellee's injury. She stated she disagreed with all of appellee's doctors, including Dr. Cooper. Although she acknowledged she had no medical training, Dr. Auerbach stated that "the crux of the diagnostic issue boils down to the interpretation of the neuropsychological test data," correctly noted that Dr. Cooper in his deposition stressed the importance of the neuropsychological test results conducted by Dr. Power in his diagnosis, and opined that those results were incorrectly interpreted by Dr. Cooper and Dr. Power.

"[I]t [is] within the province of the [Board] to pass upon th[o]se issues of fact which arose by reason of the conflicts in the testimony of the doctor who testified for the defendant and the doctor who testified for the claimant." *Chevrolet-Atlanta &c. Corp. v. Nash*, 81 Ga. App. 671, 682 (b) (59 SE2d 681) (1950). Although the superior court reversed the Board's award on the basis that Dr. Auerbach was not competent to controvert the testimony of Dr. Cooper, this is a workers' compensation case decided on the "any evidence" rule, not a medical malpractice case in which the expertise of practitioners from different schools of medicine is examined to determine whether one possesses the knowledge, i.e., is competent, to controvert the other's opinion. See in that regard *Sandford v. Howard*, 161 Ga. App. 495 (288 SE2d 739) (1982); *Bethea v. Smith*, 176 Ga. App. 467 (336 SE2d 295) (1985). Compare *Fulton-DeKalb Hosp. Auth. v. Hadley*, 174 Ga. App. 503, 504-505 (1) (330 SE2d 432) (1985).

In order for Dr. Auerbach's testimony to constitute the competent evidence supporting the Board's award, Dr. Auerbach did not have to "controvert" Dr. Cooper's testimony to establish the validity of her own contrary opinion. She merely had to be competent to make that opinion. As a licensed psychologist, Dr. Auerbach was clearly competent to testify that in her professional opinion her testing and interviews with appellee showed that his cognitive and psychological

problems were not the result of his work-related injury. Notwithstanding the fact that other doctors in different schools of practice presented contrary evidence, the Board was entitled to resolve the conflict in the experts' testimony by believing Dr. Auerbach rather than appellee's experts. " 'While direct and positive testimony cannot arbitrarily be rejected by a jury or other trier of facts, this rule does not apply to the opinion evidence of physicians or other experts. [Cit.] . . . "Our court has held that the question as to the weight and credit to be given to the opinion testimony of a physician witness in a work[ers'] compensation case is a matter to be determined by the . . . Board. [Cit.]" *United States Fidelity &c. Co. v. Doyle*, 96 Ga. App. 745, 747-748 (1) (101 SE2d 600) (1957). " 'While competent expert testimony is entitled to great weight, it is not so authoritative that [the Board] is bound to be governed by it, since it is advisory merely and intended to assist [it] in coming to a correct conclusion. . . .' [Cit.]" *B. F. Goodrich Co. v. Arnold*, 88 Ga. App. 64-65 (2), (3) (76 SE2d 20) (1953). Given that this court has held that a workers' compensation award may be based on the claimant's testimony alone even though "a whole college of physicians" testifies to the contrary, id. at 70, the Board here was certainly authorized to base its award on appellant's expert's testimony rather than on the testimony of appellee's experts.

In the absence of fraud, the findings of the Board are conclusive and shall not be set aside unless it is found that there is not sufficient competent evidence in the record to warrant the Board's decision. OCGA § 34-9-105 (c) (4); *McElreath v. McElreath*, 155 Ga. App. 826, 827 (1) (273 SE2d 205) (1980). The Board's findings of fact "are not to be set aside because the reviewing court disagrees with the conclusions drawn therefrom. When using the 'any evidence' criteria, the facts are to be construed in a light most favorable to the party prevailing before the board." *St. Paul Ins. Co. v. Henley*, 141 Ga. App. 581, 582 (234 SE2d 159) (1977). Applying that standard, we find that because there was competent evidence to support the Board's award, the superior court erred by reversing the award. See generally *Little v. Cox Enterprises*, 195 Ga. App. 211, 212-213 (393 SE2d 57) (1990).

*Judgment reversed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JULY 9, 1991.

*Savell & Williams, Tash J. Van Dora, Michael A. Ryder*, for appellant.

*Daniel J. Parker*, for appellee.