A93A1063, A93A1064. ATLANTA HILTON & TOWERS et al. v. GAITHER; and vice versa.
(436 SE2d 71)

SMITH, Judge.

In this workers' compensation case, Carolyn J. Gaither's claim for benefits for a new accident or change in condition was denied by both the administrative law judge and the Board of Workers' Compensation. Atlanta Hilton & Towers and Zurich American Insurance Company, the employer and insurer (collectively "Hilton"), appeal from the superior court's judgment remanding a portion of the case for new findings. Gaither cross-appeals from the superior court's judgment affirming the remainder of the Board's award.

The record shows that Gaither had been employed by Hilton since 1988. She had four consecutive slip and fall incidents at Hilton, in July 1988, August 1989, July 1990 and October 1990. In the latter three incidents she reportedly suffered impact or injuries to her head, back and neck. After the August 1989 injury, Gaither was examined and treated by Richard Tyler, M.D. She was released to return to work in September 1989, but "didn't feel [she] could go back to work." A friend recommended a chiropractor, Dr. Bateson, who referred her to Ralph D'Auria, M.D. However, Hilton indicated that it

would not pay for such treatment.

On July 23, 1990, Gaither again slipped and fell, and was treated by Robert S. Harshman, M.D., on July 30. Dr. Harshman examined her, noting that she "appears to embellish symptoms & movements," and referred her to Donald S. Bickers, M.D. On August 14, after examining Gaither and reviewing X-rays and a CT scan, Dr. Bickers concluded that there were no objective findings and released Gaither for work without limitation. He also noted her multiple slip and fall claims and observed that "her motivation does not seem to be very great." Dr. Tyler saw Gaither again on August 15. He concluded that she was "exaggerating her discomfort" and could return to work in a week. On August 22, Dr. Tyler again examined Gaither and found no significant problems. He noted that she returned to his office after the examination, stating that she was in too much pain to resume her work. Dr. Tyler also observed that "[s]he is convinced that she has some sort of neurosurgical problem," but that in his opinion she was able to perform her normal duty work and all other activities. On September 25, Gaither again sought a second opinion from Dr. D'Auria, the physician who treated her in August 1989, and he concluded that she was totally disabled. However, Hilton required that Gaither return to work.

Hilton's current benefits administrator, Essie Reeves, testified that she was present on October 29, 1990, when her predecessor, Annette White, received a call from Gaither asking to discuss her benefits from the July slip and fall incident. On cross-examination, Gaither acknowledged that this conversation took place, and that she told White she would not come to the office because she was afraid to walk on the slippery floors. There was no objection to this testimony. Reeves and White agreed to meet Gaither in the cafeteria to discuss her benefits, but before they could leave they received a call saying that Gaither had fallen.

Gaither testified that between 3:30 and 4:00 p.m. on October 29, 1990, she left her work station to get a hamburger, and slipped and fell on the freshly mopped floor. Her account of this fall and her injuries varied. She reported to the physician at Georgia Baptist Hospital that she fell striking her back, but told Dr. D'Auria that she "slipped and fell in an unrecalled fashion." At the hearing, however, she testified that she fell on her knees. She reported to the emergency room personnel on several occasions that she did not lose consciousness in the slip and fall incidents, then reported to her treating physician that she lost consciousness and suffered a concussion. Gaither stated on her deposition that there were two eyewitnesses to her fall; before the ALJ she testified that the fall was unwitnessed.

Wes Moulder, a security guard for Hilton at the time of the incident, arrived on the scene within three to four minutes. He testified

that the floor was dry and dirty and had not been mopped for some time. Gaither's clothes were not dirty, torn, or disarranged. Once he learned of her prior neck and back injuries, Moulder immediately summoned an ambulance to transport Gaither to the hospital. He then conducted an investigation into the incident. He was unable to find any eyewitness to Gaither's fall. Based upon their observations and the investigation, both he and Reeves concluded that the fall was staged. As a result of the investigation, Hilton did not pay any benefits for the October 1990 fall. This failure to pay constitutes the basis of Gaither's claim for penalties, as stated in Gaither's fourth enumeration of error.

After the October 1990 incident, it was discovered that approximately $300 was missing from the "cashier's bank" issued to Gaither for her cash register. Only Gaither had access to her bank. Despite several requests, Gaither never returned to the Hilton to settle her account, and was ultimately terminated because of the unexplained shortage in her bank.

1. In the main appeal, Case No. A93A1063, we reverse the ruling of the superior court remanding the case for further findings on the issue of change in condition for the worse. Hilton correctly asserts that there was ample evidence to support the ALJ's finding that Gaither failed to show any change in her condition.

"[T]he term 'change in condition' means a change in the wage-earning capacity, physical condition, or status of an employee . . . which change must have occurred after the date on which the wage-earning capacity, physical condition, or status of the employee or other beneficiary was last established by award or otherwise." OCGA § 34-9-104 (a) (1). "In cases where a claimant is injured and receives workers' compensation benefits, but subsequently returns to work and then undergoes a gradual worsening of his condition to the point where [she] is no longer able to perform [her] ordinary work, [she] has undergone a 'change in condition.' [Cits.]" *Northbrook Property &c. Ins. Co. v. Babyak*, 186 Ga. App. 339, 341 (367 SE2d 567) (1988). "A 'change in condition' claim for additional compensation is predicated upon the claimant's gradually worsening condition, from the wear and tear of performing [her] usual employment duties and of ordinary life, to the point that [she] can no longer continue to perform [her] ordinary work. (Cits.)" *Holt's Bakery v. Hutchinson*, 177 Ga. App. 154, 157 (1) (338 SE2d 742) (1985). "Whether an employee's inability to continue working has been caused by a new accident or a change in condition is a question of fact for the administrative law judge." *Northbrook Property*, supra.

Furthermore, "[t]he law is clear that ' "(i)f an employee has actually returned to work after having received compensation, and then alleges a further inability to work, then the burden of proof is upon

that employee to show that [she] has undergone a change in condition." ' [Cits.] While a claimant's subsequent termination by [her] employer may constitute a change in condition warranting additional benefits, 'the burden was on appellee to show that, after [her] termination for cause, "[her] inability to secure suitable employment elsewhere was proximately caused by [her] previous accidental injury." (Cit.)' [Cit.]" *Independent Life &c. Ins. Co. v. Cox*, 207 Ga. App. 402, 403 (1) (427 SE2d 862) (1993); see also *Aden's Minit Market v. Landon*, 202 Ga. App. 219 (413 SE2d 738) (1991).

The burden was upon Gaither to show a change in condition for the worse. The ALJ correctly found that she did not meet that burden, and did not show that she had sought work after her termination for other causes and failed to obtain it because of her alleged disability. Gaither presented no evidence of any attempt to seek work or the effect of her alleged disability on any such attempt. Furthermore, as discussed below in connection with the cross-appeal, the medical testimony relied upon by Gaither to support her claim of a change in condition was refuted both directly and indirectly.

The evidence is more than adequate to sustain the ALJ's conclusion that Gaither failed to carry her burden of proof of a change in condition for the worse, that Gaither has no disability to work, and that she has not had such a disability since she returned to work from the July 1990 accident. The trial court erred in reversing the Board's decision, and the judgment in Case No. A93A1063 must be reversed.

2. In the cross-appeal, Case No. A93A1064, Gaither contends in two enumerations of error that the ALJ ignored uncontradicted evidence of her injury or change in condition, and therefore should have found in her favor.

On appeal of a workers' compensation case, the evidence is construed most favorably to the party prevailing before the Board, *Impress Communications v. Stanley*, 202 Ga. App. 226, 229 (1) (414 SE2d 238) (1991). "In the absence of fraud, the findings of the Board are conclusive and shall not be set aside unless it is found that there is not sufficient competent evidence in the record to warrant the Board's decision. [Cits.]" *Elbert County v. Burnett*, 200 Ga. App. 379, 382 (408 SE2d 168) (1991).

Despite Gaither's contention to the contrary, the finder of fact is not absolutely bound by medical opinion evidence, even though uncontradicted. The Board is not "bound in every way to accept the literal statements of a witness before it, merely because such statements are not contradicted by direct evidence. Implications inconsistent with the testimony may arise from the proved facts and in still other ways the question of what is the truth may remain an issue of fact, despite uncontradicted evidence in regard thereto. [Cit.]" *Howard Sheppard, Inc. v. McGowan*, 137 Ga. App. 408, 411 (9) (224 SE2d

65) (1976). The medical records relied upon by Gaither were not uncontroverted. They were contradicted by her own inconsistent reports, the evidence that an accident did not take place, and the examinations performed by other physicians both before and after the October 1990 incident. The emergency room records and physicians' findings which Gaither contends were ignored were based entirely upon Gaither's report that an accident had occurred, and Gaither's subjective complaints of pain or inability to move. Moreover, Gaither's testimony and medical records contain many internal inconsistencies, such as differing accounts of the manner of her alleged fall, the severity and location of her previous complaints, loss of consciousness, and other relevant facts.

If a finding of fact by the Board is supported by any evidence, it is conclusive and binding upon the superior court and this court. *Franks v. Avila*, 200 Ga. App. 733, 735 (4) (409 SE2d 564) (1991). There is more than ample evidence to support the award.

3. Gaither next asserts that the ALJ failed to apply the rules of evidence, and based her decision entirely upon "incompetent, irrelevant, inadmissible and entirely speculative testimony without any foundation whatsoever." This assertion is unsupported by argument or citation of authority, and is therefore deemed abandoned. Court of Appeals Rule 15 (c) (2); *Wilkie v. State*, 153 Ga. App. 609 (1) (266 SE2d 289) (1980).[1] We are not required to address this issue further. However, to the extent we are able to determine the objections raised by Gaither, we will review briefly the admissibility of the evidence supporting the ALJ's findings.

Gaither complains in her statement of facts that the ALJ refused to allow counsel to make an objection. Counsel in fact did object, though not in the clearest form, to Hilton's cross-examination of Gaither on her previous slip and fall accidents, which counsel contended were irrelevant. Hilton is entitled to a thorough and sifting cross-examination of the opposing party. See OCGA § 24-9-64. As the evidence developed in the course of the hearing, Gaither's other slip and fall accidents clearly were relevant to the issues in this case. Evidence of claimant's persistent, ongoing efforts to claim disability and her multiple similar slip and fall incidents was relevant to her state of mind, motive and inclination, as well as to Hilton's contention that the claimant was engaging in a scheme of fraudulent conduct. See, e.g., *Collier v. South Carolina Ins. Co.*, 205 Ga. App. 323, 324 (422 SE2d 52) (1992). As for Gaither's telephone conversation with the benefits manager almost simultaneous with the purported accident,

---

[1] In over 30 unnumbered pages constituting Gaither's brief and reply brief, there is not a single citation of legal authority, whether statutory or case law.

Gaither herself testified to this conversation and her own statements made in the course of the conversation, without any objection being raised. This objection was therefore waived. *Sanchez v. Aaron Van Lines*, 160 Ga. App. 173, 174 (2) (286 SE2d 469) (1981); *Corbitt v. State*, 169 Ga. App. 739, 740 (3) (315 SE2d 25) (1984).

Finally, a lay witness may properly testify to his or her opinion, provided that the facts and observations upon which the opinion is based are disclosed to the finder of fact. *Dual S. Enterprises v. Webb*, 138 Ga. App. 810, 812 (3) (227 SE2d 418) (1976). Both Moulder and Reeves testified to their personal observation of the facts upon which they relied to reach the conclusion that Gaither had staged the October 1990 incident. Furthermore, their conclusions were relevant to the issue of statutory penalties. The facts witnessed and testified to by Moulder and Reeves explain the conduct of Hilton in refusing to pay benefits for the purported October 1990 accident, which Gaither relies upon to claim statutory penalties. *Davis v. Cincinnati Ins. Co.*, 160 Ga. App. 813, 816 (3) (288 SE2d 233) (1982). The evidence supporting the finding of the ALJ that no new injury occurred, and that Gaither did not sustain a change in condition for the worse on or about October 29, 1990, was clearly admissible.

4. Gaither cites no authority for her contention that she is entitled to penalties and attorney fees. There is no basis in fact or law for such an award in this case. See OCGA § 34-9-108.

5. Pursuant to Court of Appeals Rule 26 (b), we assess against Gaither a frivolous appeal penalty in the amount of $500.

*Judgment affirmed in Case No. A93A1064. Judgment reversed in Case No. A93A1063. Beasley, P. J., and Cooper, J., concur.*

DECIDED SEPTEMBER 22, 1993.

*Drew, Eckl & Farnham, John C. Bruffey, Jr., Scott T. Bushnell,* for appellants.

*G. Clyde Dekle III,* for appellee.